484 P.2d 196

Vernie H. EDWARDS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Rolf Wald (Rolf Wald Landscaping), Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 410.

Court of Appeals of Arizona, Division 1, Department A.

April 28, 1971.

Rehearing Denied May 19, 1971.

Review Denied June 15, 1971.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

William C. Wahl, Jr., Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, by R. Kent Klein, Phoenix, for respondent carrier.

STEVENS, Presiding Judge.

The lawfulness of an award of The Industrial Commission of Arizona is before us for review. The award determined that the petitioner sustained no loss of earning capacity.

The petitioner, Vernie H. Edwards, is the injured workman. At the age of 35 years, a man with little formal education, he was employed as a laborer in the Phoenix area and on 2 July 1963 he sustained an industrially related back injury. His average monthly wage was determined to be $400.58. He filed a claim in connection with his injury and the claim was closed with an award entered on 13 December 1963, and the average monthly wage determination became final.

The following June his claim was. reopened. On 8 July 1964 the petitioner submitted to surgery which, very briefly, we describe as a disk excision at the S–1 level and a laminectomy necessitated by a herniated lumbrosacral disk with nerve root compression. The intervening procedural steps are not material to this opinion and the file discloses that on 3 May 1967 the petitioner again submitted to surgery. The surgery was an industrial responsibility causally related to his 2 July 1963 injury. The report of the operation stated the same to be "Interlaminal excision of recurrent disc extrusion, lumbrosacral, left." Thereafter the petitioner was released for work and on 14 May 1969 a hearing was held to determine his loss of earning capacity. This hearing led to the award which is now in question.

Effective 1 January 1969, the responsibilities of the hearing officers and of the Commission were modified as to certain industrial claims, but under the history of this particular case and in relation to the petitioner's rights, the hearing officer at the 14 May 1969 hearing retained his status as a referee whose sole power was to conduct the hearing and to make his recommendations. These recommendations were purely advisory to the Commission and the Commission retained the fact-finding power and responsibility. These observations are made, not in relation to the facts which the hearing officer found and which are set forth in the award entered by the Commission, but more particularly in relation to the facts which the hearing officer found which were not set forth in the award.

The record is without dispute that after the petitioner recovered sufficiently to seek employment he was unable to secure employment in the Phoenix area. The primary reason was that no one would employ him on a job within his qualifications after the prospective employer learned of the petitioner's history of back trouble. The petitioner then went to California and secured employment. He sent in his reports of wages earned and when the Commission sought confirmation from his California employers the industrial injury came to light and his employment was terminated.

Thereafter he returned to his native state, which state we will not name for the reason that the petitioner remains fearful that he will again be deprived of employment should knowledge of his industrial injury become known to his current employer. His back still bothers him and from time to time the petitioner takes time off from his work to enable him to recuperate and to return to his work. He performs his work properly and often with pain. He testified that there is little likelihood of promotion because he feels that he would not be able to undertake the greater responsibility.

The petitioner presented evidence as to the difference in pay scales for the work he was doing in the sister state as of the date of his injury and as of the date of the hearing, a difference due to general increases in wages paid in that type of employment in that area. The petitioner offered no evidence as to the Phoenix pay

scale for similar work, work he was not successful in securing due to his industrial injury. The fund offered no evidence as to the pay scale of that type of work in the Phoenix area.

The hearing officer found:

"The applicant has sustained a 14% reduction in earning capacity as a result of his industrial injury of July 2, 1963 and is therefore entitled to the monthly sum of $31.39 until further order of the Commission, pursuant to A.R.S. 23–1044."

The Commission omitted this finding.

The hearing officer found:

"As a result of said injury, he has a 10% general physical impairment which prevents him from returning to and engaging in his former work as a laborer;"

The Commission adopted only so much of the finding as related to his 10% disability.

The hearing officer found:

"Because of said injury his opportunities for employment have been considerably diminished; he has been unsuccessful in his attempts to obtain employment in Arizona."

The Commission omitted this finding.

The hearing officer found his present wage scale which finding was adopted by the Commission. The hearing officer adjusted his present wage scale to the comparable wage scale as of the date that the petitioner sustained his injury in Arizona, a finding which was omitted by the Commission.

The hearing officer found:

"Pursuant to A.R.S. 23–1044 the applicant is entitled to a monthly award until further order of the Commission on the basis of 55% of the difference between $400.58 and $343.51."

This finding was omitted by the Commission.

We believe that the Commission erred and that it was led into error by the objections which the attorney for the Fund filed in relation to the hearing officer's report. In his objections the attorney for the Fund relied strongly upon Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230 (1951), a case which we will consider later in this opinion. The attorney for the Fund urged:

"*Whyte* is inapplicable in the case presently before the Commission for one basic reason. In the instant case, the wage is not due solely to changes in the local economy. Instead, the claimant's present wage is a reflection not only of the fact that several years have elapsed since his injury, but also of a total change of labor market from Arizona to * * *. This additional factor so complicates matters as to preclude any application of the *Whyte* doctrine. By moving to * * *, the claimant has not only become employed in a labor market having wages substantially different from those of Arizona, but one in which all the goods and services he purchases are going to differ substantially in price from similar Arizona goods and services. While second drivers in * * * in 1963 averaged only 2¾ cents per mile, second drivers in Arizona in 1963 averaged approximately 5 cents per mile. Thus, it can be seen that consideration of the claimant's 1963 average monthly wage, determined in the context of the Arizona labor market, and the 1963 wages for * * * truck drivers, determined in the context of a different labor market, is totally misleading and improper."

The attorney for the Fund offered no evidence to sustain the statement that wages in the state of employment were "substantially different from those of Arizona." He offered no evidence that the cost of "goods and services he purchases are going to differ substantially in price from similar Arizona goods and services." He offered no evidence that the wages in Arizona for similar work were approximately double the wages for the employment in which the petitioner was engaged in the sister state. The attorney for the Fund urged

in his objections to the hearing officer's report and urges before this Court that because the Supreme Court of Arizona, in the Whyte case, took judicial notice of changed wages in the Phoenix area in the time period between 1942 and 1947, recognizing that there was a spiraling wage rate due to the war and post-war business booms, that the Commission and this Court should take judicial notice of the "facts" which he set forth in his objections. We cannot take judicial notice as requested by the attorney for the Fund.

In the Whyte case our Supreme Court stated:

> "The diminished earning capacity of petitioner occurred the moment he sustained his injury. It is only the extent of the loss of his earning capacity which remained undeterminable and this continues until the healing processes of nature renders the condition of his injuries stationary so that the character of work he is able to do, if any, may be ascertained." 71 Ariz. at 345, 227 P.2d at 234.

Later in the opinion the Supreme Court stated:

> " * * * the second predicate based upon his new employment must be determined by ascertaining what wages others in the same or most similar class in the same or most similar employment in the same or similar locality were receiving at the time the injury occurred." 71 Ariz. at 345, 346, 227 P.2d at 235.

The last statement is also strongly relied upon by the Fund. In our opinion this last-quoted statement does not apply to the instant fact situation. Where it has been demonstrated without controversion that comparable employment was not available to the petitioner in the Phoenix area, it is unrealistic for the Fund to urge that if in desperation and to support his family an injured workman seeks and secures work elsewhere, that the workman must therefore be precluded from establishing a loss of earning capacity. The record demonstrates that he was not able to compete in the open labor market in the Phoenix area in relation to employment which would be of comparable character to the employment engaged in in the sister state and that this lack of ability to compete was causally related to the industrial accident.

In our opinion, the petitioner proved a *prima facie* case and the Fund rested on the theory that it had no burden to go ahead with the evidence. In this connection it is of interest to note that in the Whyte case our Supreme Court also stated:

> "It will certainly impose no undue burden upon the commission to ascertain the wages paid at the time of his injury for the kind of work the injured employee is able to perform when his injury becomes stationary. The commission furnished that information to this court in the instant case." 71 Ariz. at 347, 227 P.2d at 235.

We make one last comment on the Fund's theory of judicial notice as to wages and living cost. We quote briefly from Allen v. Industrial Commission of Arizona, 87 Ariz. 56, 347 P.2d 710 (1959):

> "There is no question but that the findings of the Commission should be affirmed if supported by competent evidence. (Citations omitted.) * * * Such competent evidence must be in the record and cannot be furnished by data in the Commission's files or by application of the doctrine of 'judicial knowledge' (Timmons v. Industrial Commission, supra, 83 Ariz. 74 at pages 80–81, 316 P.2d 935)." 87 Ariz. at 66, 347 P.2d at 717.

The record is clear. The petitioner sustained his burden of proof. There was an absence of evidence to the contrary.

The award is set aside.

CASE and DONOFRIO, JJ., concur.