827 P.2d 693

**Terrence MATTHEWS, Claimant–Appellant,**

**v.**

**DEPARTMENT OF CORRECTIONS, Employer, and State Insurance Fund, Surety, Defendants–Respondents.**

**No. 18617.**

Supreme Court of Idaho, Boise, December 1991 Term.

March 10, 1992.

Terrence Matthews, pro se.

Larry J. EchoHawk, Atty. Gen., Boise, and Ellis, Brown & Sheils, Boise, for defendants-respondents.

BISTLINE, Justice.

Terrence Matthews appeals from the Industrial Commission's denial of his motion for modification of a compensation agreement previously entered into by Matthews and the State Insurance Fund (SIF); the motion is based on an alleged change of condition or the need to correct a manifest injustice. I.C. § 72–719. Also challenged is the Commission's denial of Matthews' request for further medical benefits. The issues on appeal are (1) whether the Industrial Commission's findings of fact are supported by substantial competent evidence, and (2) whether the compensation agreement entered into by Matthews and SIF is ambiguous.

The underlying facts of this case are not in dispute. On March 24, 1985, Matthews injured his back in an industrial accident while employed as a correctional officer at the Idaho State Correctional Institution at Boise, and was totally disabled from August 23, 1985, to May 24, 1986. He received appropriate disability benefits together with medical treatment, including surgery. Dr. Rudd, the treating surgeon, rated Matthews' permanent physical impairment at twenty percent of the whole man. SIF and Matthews executed an agreement, which the Commission approved, itemizing the amounts of temporary disability payments and medical payments which SIF had paid. Therein was stated that Matthews was receiving a permanent disability award of $15,895.[1] On June 1, 1987, Matthews returned to work full-time as a correctional officer with the state penitentiary.

Eighteen months later, pursuant to I.C. § 72–719, Matthews alleged a change in his condition, and requested the Commission to increase his disability payments. He also alleged that manifest injustice had occurred, based upon his allegation that in signing the agreement he understood its purpose was to settle the issue of permanent physical impairment, but not the amount of his permanent partial disability. He contended that following recovery, his inability to reenter the Army National Guard deprived him of wages and future retirement benefits.

As the Commission noted, when a claimant applies for a modification of an award under I.C. § 72–719, he or she bears the burden of showing a change in condition. *Boshers v. Payne*, 58 Idaho 109, 70 P.2d 391 (1937). Matthews was required to make a showing before the Commission that he had an increased level of impairment, *Urry v. Walker & Fox Masonry Contractors*, 115 Idaho 750, 769 P.2d 1122 (1989), and to establish with reasonable medical probability the existence of a causal relationship between the change in condition and the initial accident and injury.

1. The parties also entered into an oral agreement providing Matthews with retraining benefits in the form of total temporary disability payments, to attend a computer and word-processing course. A dispute as to the duration of the retraining benefits arose and resulted in an Industrial Commission decision filed March 7, 1988.

*Carter v. Garrett Freightlines*, 105 Idaho 59, 665 P.2d 1069 (1983).

Within the context of the Commission hearing, Matthews also requested additional medical benefits under the provisions of I.C. § 72–432(1).[2]

### I.

■ The Commission's findings of fact are subject to limited appellate review; our function is to determine whether the findings are supported by substantial, competent evidence, and if so, we will not disturb them on appeal. *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984).

### Additional Impairment to Back

■ The Commission determined that Matthews had not met his burden of showing that any change in the condition of his back was related to his industrial accident of March 1985, but more than likely was related to either an alleged industrial accident of March 1988[3] or to an occasion in January 1989 when Matthews moved several heavy objects during a fire in his home.

There is ample evidence in the record to support these findings by the Commission. The only medical evidence presented by Matthews, an MRI (magnetic resonance imaging) report from 1989, does not support his contention that he has an increased level of impairment in his back, or that any alleged change is causally related to the original 1985 injury. Medical reports presented by the defendants demonstrate that more recent back problems, if any, are likely related to the injuries Matthews sustained in 1988 and 1989, and have no relation to the 1985 industrial accident.

Accordingly, we affirm the portion of the order holding that Matthews failed to sufficiently prove that the condition of his back

had changed, or that any alleged new impairment was related to the 1985 injury.

### Further Medical Benefits

■ The Commission found that Matthews sought payment for several medical bills contained in Exhibit 9, as well as for prescription medications. We agree with the Commission that Matthews is not entitled to payment, pursuant to I.C. § 72–432(1), because "no evidence indicate[s] that these bills were directly incurred as a result of his [1985] back injury." Commission's Order at 10.

The medical bills contained in Exhibit 9 document a $67 charge for an office visit on January 16, 1989; a $665 charge for an MRI scan on January 14, 1989; and a $228 charge for various treatments from January 17, 1989, through February 8, 1989. The Commission noted that Matthews presented no evidence demonstrating any relation between these bills and his 1985 industrial injury, and in fact, Matthews testified that the bills were incurred after a January 1989 fire at his home. The Commission correctly concluded that Matthews failed to carry his burden of establishing that these medical bills arose as a result of his initial back injury in 1985.

The Commission does not specifically identify what prescription medication bills it is reviewing. In his appellate reply brief, Matthews referred to a prescription for Motrin. Upon our review of the record, we find a reference to Motrin in Dr. Rudd's medical notes of April 1, 1988, and again in his medical notes of September 21, 1988. Nowhere in the record, however, is there evidence of the actual bills, or substantial evidence linking the Motrin use to Matthews' 1985 back injury. Accordingly, we also affirm the Commission's finding that

**2.** Idaho Code § 72–432(1) provides:
  The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be required by the employee's physician or needed immediately after an injury or disability from an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the

injured employee may do so at the expense of the employer.

**3.** In early 1988, Matthews stepped into a hole at work, twisting his left foot and ankle, fracturing a bone in his foot, and wrenching his lower back. Matthews failed to file a claim based on this accident until August 24, 1989, which prevented it from being addressed in the proceedings before us.

Matthews failed to meet his burden of establishing that any expenses for prescription medication were incurred due to his 1985 industrial accident.

### Manifest Injustice

■ Matthews argues in the alternative that the compensation agreement should be modified under I.C. § 72–719 to alleviate "manifest injustice." His argument is partially based upon his inability to reenter the Army National Guard after the 1985 accidental injury disabled him. He claims deprivation of military wages of approximately $180.00 per month as well as future retirement benefits. The Commission found the evidence before it did not clearly establish that Matthews was denied reentry into the Guard primarily due to his 1985 back injury. Although Matthews presented ample evidence documenting his service record, our review of the record convinces us that we must defer to the Commission's finding that he failed to meet his burden of producing evidence in support of his contention that his 1985 injury prevented him from rejoining the Army National Guard.

### II.

■ Turning again to Matthews' manifest injustice grounds, he contends that he never intended, nor was he ever informed, that the compensation agreement was a final settlement. He further claims the agreement "[does] not address the injury in and of itself," presumably meaning it does not address his *permanent disability*, and only addresses his *impairment rating*. Appellant's Brief at 4. Because we are not bound by the Commission's conclusions of law, we exercise free review to determine whether the compensation agreement was ambiguous. *Combs v. Kelly Logging*, 115 Idaho 695, 769 P.2d 572 (1989).

■ A compensation agreement is ambiguous when it is unclear whether medical impairment only has been determined or if disability which includes non-medical factors has been determined. *Fenich v. Boise Elks Lodge No. 310*, 106 Idaho 550, 682 P.2d 91 (1984); *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 682 P.2d 1263 (1984).

*Fenich* and *Woodvine* involved compensation agreements similar to that in the present case. The agreements in those cases read in part, "[t]he employee has been given a permanent disability and/or impairment rating of: _____ for an award of _____." In both cases, this Court held that such language was ambiguous. *Fenich*, 106 Idaho at 552, 682 P.2d at 93; *Woodvine*, 106 Idaho at 722, 682 P.2d at 1289.

In sharp contrast, the compensation agreement signed by both Matthews and SIF reads in pertinent part, "[t]he employee has a permanent disability of: 20% loss of whole man *including, but not limited to*, physical impairment, for an award of $15,895.00...." Industrial Commission's Exhibit 21 (emphasis added). This language could not reasonably be found to be ambiguous. It clearly states that the agreement pertains to both physical impairment and permanent disability.

■ As the Commission correctly opined, the fact that Matthews settled for a disability award based on twenty percent of the whole man, which is equal to his permanent impairment rating, does not indicate that he has been treated unfairly. According to *Graybill v. Swift & Co.*, 115 Idaho 293, 766 P.2d 763 (1988), whether a claimant has suffered a permanent disability greater than permanent physical impairment is determined by assessing "whether the physical impairment, taken in conjunction with non-medical factors [in I.C. § 72–430], has reduced the claimant's capacity for gainful activity. *Id.* at 294, 766 P.2d at 764 (quoting *Bennett v. Clark Hereford Ranch*, 106 Idaho 438, 440–41, 680 P.2d 539, 541–42 (1984)). In the case before us, the Commission noted that at the time of the hearing in December 1988, Matthews was employed at a higher hourly wage than he received in the same position prior to the 1985 accidental injury, and therefore did not have a reduced capacity to engage in gainful activity.

Matthews was advised on several occasions to retain an attorney, but made his

own decision to proceed alone.[4] His *pro se* brief does not point to any deception or artifice practiced upon him by his employer or its surety.

### III.

Matthews has failed to show why, where, and how the Commission's findings are not supported by substantial evidence. Finding no error on the part of the Commission, its decision is affirmed.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ. concur.

---

**4.** From the inception of this case, both counsel for SIF, Max M. Sheils, Jr., and Referee Coston of the Industrial Commission repeatedly urged Matthews to retain an attorney.