870 P.2d 1292

Neil DAVAZ, Claimant–Appellant,

v.

**PRIEST RIVER GLASS CO., INC.,** Employer, and Idaho State Insurance Fund, Defendants–Respondents.

No. 20206.

Supreme Court of Idaho,
Coeur d'Alene, Oct. 1993 Term.

Feb. 2, 1994.

Rehearing Denied April 7, 1994.

Dissenting Opinion on Denial of
Rehearing by Bistline, Justice
April 7, 1994.

John T. Mitchell and Thomas A. Mitchell, Coeur d'Alene, for claimant-appellant. John T. Mitchell, argued.

Randall Blake & Cox, Lewiston, for defendants-respondents. Jay P. Gaskill, argued.

McDEVITT, Chief Justice.

Appellant Neil Davaz ("Davaz") appeals from an order of the Industrial Commission ("Commission") defining the extent of his permanent disability resulting from injuries sustained in a work-related accident that occurred at defendant business Priest River Glass Company. Specifically, Davaz contests the Commission's use of the job market in Missoula, Montana, where Davaz obtained employment after the accident, to measure Davaz's employability under I.C. §§ 72–430(1) and 425. Davaz argues that the Commission should have restricted the scope of its review to a reasonable geographic area around Priest River, Idaho, where Davaz lived and worked at the time of the accident. We affirm.

## BACKGROUND

Davaz was injured on the job while working for respondent Priest River Glass Company ("Employer"). The injury prevented him from performing the necessary duties of his employment and, consequently, his employer terminated his employment. After receiving medical treatment and extensive rehabilitative therapy, Davaz submitted a

claim to the Commission seeking to recover medical expenses and disability compensation from Employer and its surety, the Idaho State Insurance Fund ("ISIF"). Meanwhile, Davaz sought alternative employment in the Priest River area and retraining benefits from ISIF so he could qualify for comparable employment available in the Priest River area. ISIF refused to fund any retraining. Dr. Blaisdell, an orthopedic surgeon in Sandpoint, examined Davaz. Dr. Blaisdell found Davaz had impairments of 5% related to loss of motion in dorsolumbar spine; 3% impairment of the whole person due to pain that reduces his working capacities; 5% of the whole person due to Davaz's lifestyle, behavior and personality, which Dr. Blaisdell stated had been adversely affected; and an additional 5% impairment for each of the two levels of claimant's lumbar spine, which were affected by "Diskogenic disease." Dr. Blaisdell gave Davaz a medical impairment rating of 18.5%.

On February 4, 1991, Davaz found comparable employment in Missoula, Montana, and moved his family there from Priest River to begin work with Montana Glass, Inc. With the move, Davaz's wife lost her job running a day care where she earned $600–$800/month. Davaz also lost his position on the Priest River City Council for which he received $75/month and free water and sewer.

On March 14, 1991, a medical panel reevaluated Davaz and found he did not need further medical treatment and could return to his previous occupation as a glazier. The panel concluded that Davaz had a permanent physical impairment of 6%. On August 23, 1991, Davaz filed application for hearing before the Industrial Commission to recover permanent disability compensation from Employer. Davaz presented uncontroverted testimony that he received $10.45/hour at the time of the injury, and worked 10–18 hours of overtime per week at time-and-a-half pay. Dan Brownell, an agent of respondent ISIF, testified that there were no comparable paying jobs in the Priest River area given Davaz's physical limitations, and that the most Davaz could expect to earn was $5 to $6 an hour. He also testified that Davaz was extremely motivated to find new employment.

On September 8, 1992, the Commission filed its Findings of Fact, Conclusion of Law, and Order. The Commission found that the injury occurred while Davaz was lifting large pieces of glass for Employer. It also found that the injury precluded Davaz from his former employment that required heavy lifting. The Commission recognized that Davaz actively sought comparable employment in Priest River, that comparable employment most likely was unavailable within a reasonable geographic area, and that Davaz would likely be limited to jobs paying 50–60% of his formerly hourly wage. Nonetheless, because Davaz relocated to an area where he found comparable employment, the Commission refused to measure his disability against the labor market he left in Priest River. Instead, the Commission measured his disability against the labor market he voluntarily entered after the injury occurred. Based on the latter measure, the Commission found that Davaz had sustained a permanent disability due to non-medical factors in the amount of 10% of the whole person, in excess of his physical impairment rating of 8.25%. Davaz appeals the Commission's rulings, challenging the relevancy of the Missoula labor market, and, in the alternative, asserting that, should the Missoula labor market be applicable, the expenses and losses that Davaz incurred in moving to Missoula should be considered.

### ISSUES ON APPEAL

I. Whether the Industrial Commission erred in considering the Missoula labor market to determine the extent of Davaz's disability.

II. Whether the Industrial Commission should have considered expenses and losses incurred in the move to Missoula.

III. Whether the Industrial Commission made sufficient findings of fact to support its ruling.

### STANDARD OF REVIEW

The standard of review for appeals from the Industrial Commission is two-fold.

The Commission's factual findings are subject to a clear error standard, and will be upheld if supported by competent and substantial evidence construed most favorably to the party who prevailed below. *Vernon v. Omark Indus.*, 115 Idaho 486, 488, 767 P.2d 1261, 1263 (1989) (citing *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 766 P.2d 711 (1988); and *Blackwell v. Omark Indus.*, 114 Idaho 10, 15, 752 P.2d 612, 617 (1988)). However, this Court exercises free review over the Commission's conclusions of law. Idaho Const. art. V, § 9; *Sprague v. Caldwell Transp., Inc.*, 116 Idaho 720, 722, 779 P.2d 395, 397 (1989).

## ANALYSIS

### I.

### THE INDUSTRIAL COMMISSION DID NOT ERR IN CONSIDERING THE MISSOULA LABOR MARKET TO DETERMINE THE EXTENT OF DAVAZ'S DISABILITY

When presented with a claim for permanent disability benefits, the Commission must evaluate the claimant's permanent disability according to I.C. §§ 72–425 and 72–430. Idaho Code § 72–425 defines permanent disability as a function of the claimant's ability to engage in gainful activity as affected by physical impairment in conjunction with nonmedical factors. Simply read, permanent disability compensation is awarded based on the claimant's decreased capacity to engage in gainful activity. *Matthews v. Department of Corrections*, 121 Idaho 680, 683, 827 P.2d 693, 696 (1992) (citing *Graybill v. Swift & Co.*, 115 Idaho 293, 294, 766 P.2d 763, 764 (1988)). The claimant must prove the extent of his disability. *Seese v. Ideal of Idaho, Inc.*, 110 Idaho 32, 34, 714 P.2d 1, 3 (1985). If there is no decreased capacity, no award is warranted.

Idaho Code § 72–430(1) prescribes the nonmedical factors that the Commission must consider when determining permanent disability. The factor at the heart of this dispute is "the diminished ability of the [claimant] to compete in an open labor market within a reasonable geographic area considering all the personal and economic circumstances of the employee...." I.C. § 72–430(1). The confusion in this case results from the failure of the statutes to specify the hub from which the spokes of a "reasonable geographic area" radiate, whether it be from the place the injury occurred, the place the claimant resided at the time the injury occurred, or the place the claimant resides at the time of hearing. Thus, we have no clearly expressed legislative intent, and it is the duty of this Court to construe I.C. § 72–430(1) consistent with the established rules of statutory construction.

A construing court's primary duty is to give effect to the legislative intent and purpose underlying a statute. *In re: Permit No. 36–7200*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992); *Idaho County Prop. Owners v. Syringa General Hosp. Dist.*, 119 Idaho 309, 312, 805 P.2d 1233, 1236 (1991); *Gumprecht v. City of Coeur d'Alene*, 104 Idaho 615, 661 P.2d 1214 (1983). Moreover, the court must construe a statute as a whole, *In re: Permit No. 36–7200*, 121 Idaho at 823, 828 P.2d at 852, and consider all sections of applicable statutes together to determine the intent of the legislature. *Magnuson v. Idaho State Tax Comm'n*, 97 Idaho 917, 920, 556 P.2d 1197, 1200 (1976). It is incumbent upon the court to give the statute an interpretation that will not deprive it of its potency. *Sweitzer v. Dean*, 118 Idaho 568, 571, 798 P.2d 27, 31 (1990); *Magnuson*, 97 Idaho at 920, 556 P.2d at 1200. In construing a statute, not only must we examine the literal wording of the statute, *In re: Permit No. 36–7200*, 121 Idaho at 823, 828 P.2d at 852, but we also must study the statute in harmony with its objective. *Doe v. Durtschi*, 110 Idaho 466, 478, 716 P.2d 1238, 1250 (1986). We also must take account of all other matters such as the reasonableness of the proposed interpretations and the policy behind the statute. *Sweitzer*, 118 Idaho at 572, 798 P.2d at 31; *see also, Local 1494 of Int'l. Ass'n. of Firefighters v. City of Coeur d'Alene*, 99 Idaho

630, 639, 586 P.2d 1346, 1353 (1978) (citation omitted).

■ More specifically, we must liberally construe the provisions of the workers' compensation law in favor of the employee, in order to serve the humane purpose for which the law was promulgated. *Sprague v. Caldwell Transp., Inc.*, 116 Idaho 720, 721, 779 P.2d 395, 396 (1989). The purpose of the workers' compensation law is to provide sure and certain relief for injured workmen and their families and dependents. I.C. § 72–201.

■ A careful reading of the language of I.C. § 72–430(1) in its entirety and in light of the overall workers' compensation law persuades this Court to interpret the clause "reasonable geographic area" to refer to the area surrounding the claimant's home at the time of the hearing. The language of the statute itself reveals that the legislature chose not to qualify the "reasonable geographic area" clause with a time reference, whereas the legislature did qualify the immediately preceding clause that states "account shall be taken of ... the occupation of the employee, and his age *at the time of accident....*" I.C. § 72–430(1) (emphasis added). Moreover, it is significant that the time of the hearing is the crucial point at which a claimant's permanent disability is to be permanently settled. If the "personal and economic circumstances of the employee" at the time of the hearing do not reflect a compensable need, then the spirit of the workers' compensation law would not be served by awarding disability based upon an antecedent, but no longer existing, need. Granted, there may be instances where a market other than the claimant's residence at the time of the hearing is relevant to the I.C. § 72–430(1) inquiry, and such determinations should be made on a case by case basis based on individual facts and circumstances. *See e.g. Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 565 P.2d 1360 (1977) (court allowed evidence from market vacated by claimant after injury as well as market of residence at the time of the hearing).

■ Such a reading of the statute is consistent with the primary purpose of the award of permanent disability, which is to compensate the claimant for his or her loss of earning capacity. *Matthews v. Department of Corrections*, 121 Idaho 680, 683, 827 P.2d 693, 696 (1992) (citing *Graybill v. Swift & Co.*, 115 Idaho 293, 294, 766 P.2d 763, 764 (1988)); *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982). In this case, the facts clearly show that Davaz has lost no earning capacity, although, admittedly, this is due solely to his own highly commendable efforts. The job he currently holds pays as much or more than his previous job. It would not serve the purpose of the workers' compensation law to award Davaz disability based on the market from which he and his family have permanently emigrated.

Such a reading also is reenforced by a prior ruling emanating from this Court in *Lyons v. Industrial Special Indemn. Fund*, 98 Idaho 403, 565 P.2d 1360 (1977). In *Lyons*, this Court held that the Commission may consider the labor market within a reasonable distance of claimant's *home* both at the time of the injury and the time of the hearing to determine claimant's post-injury employability. *Lyons*, 98 Idaho at 407 n. 3, 565 P.2d at 1364 n. 3. The Court only allowed consideration of the former because claimant's new residence provided even less opportunity for employment, and the Court felt that "a claimant should not be permitted to achieve permanent disability by changing his place of residence." *Id.* A thoughtful analysis of this footnote reveals that this Court desired the Commission to continue to consider the more promising market from which the claimant moved in its determination of employability, deeming that limiting the scope of consideration to the less economically favorable geographic area surrounding claimant's new home would result in an unwarranted disability compensation windfall to claimant. Such a mandate indicates that the Court concluded that the statute, I.C. § 72–430(1), naturally contemplated consideration of the market in which the claimant was living at the time of hearing,

and thus felt it necessary to emphasize that the Commission could consider the market claimant had voluntarily left.

Davaz relies on *Combs v. Kelly Logging*, 115 Idaho 695, 769 P.2d 572 (1989), to support his argument that the Missoula, Montana, labor market is not a "reasonable geographic area" upon which to base an award of permanent disability under I.C. § 72–430(1). In *Combs*, this Court refused to include Missoula, to which Combs was commuting weekly to work, as a relevant labor market, restricting its analysis to Salmon, Idaho, Combs' home at the time of injury. *Combs*, 115 Idaho at 698, 769 P.2d at 575. However, the *Combs* holding is distinguishable, in that Combs did not move to Missoula but retained his residence in Salmon, Idaho. In contrast, as the Commission correctly recognized, Davaz has moved to the Missoula market.

All of the lines of analysis converge. The literal wording, the general rules of statutory interpretation, prior case law, and the underlying purpose of the statute all suggest that, under I.C. § 72–430(1), the Industrial Commission should consider the market in which a claimant resides at the time of the hearing as the axis from which the scope of a "reasonable geographic area" is defined. Accordingly, we affirm the award of the Industrial Commission.

## II.

## THE COMMISSION DID NOT ERR IN FAILING TO CONSIDER EXPENSES AND COSTS INCURRED BY DAVAZ IN THE MOVE FROM PRIEST RIVER TO MISSOULA

 Davaz asserts that, should Missoula be deemed a relevant labor market for purposes of applying I.C. § 72–430(1), this Court should instruct the Commission to consider the expenses and losses incurred by Davaz in moving to Missoula. We decline to so rule. The workers' compensation laws do not empower this Court to create the sweeping new categories of benefits requested by

Davaz. There is no legal authority to support Davaz's position. Workers' compensation benefits are a compensatory scheme and not payment in lieu of wages. *Deonier v. Idaho Pub. Employees Retirement Bd.*, 114 Idaho 721, 725, 760 P.2d 1137, 1141 (1988).

## III.

## THE INDUSTRIAL COMMISSION MADE ADEQUATE FINDINGS OF FACT TO SUPPORT ITS RULING

 ·Davaz also argues that the record does not clearly show how the Commission arrived at its 10% disability in excess of impairment rating, and that the case must be remanded for additional findings of fact and conclusions of law that comply with *Madron v. Green Giant Co.*, 94 Idaho 747, 751, 497 P.2d 1048, 1052 (1972). We disagree. The Industrial Commission need not "make detailed findings on every fragment of evidence presented to it." *Swanson v. Kraft, Inc.*, 116 Idaho 315, 319, 775 P.2d 629, 633 (1989) (quoting *Madron*, 94 Idaho at 751, 497 P.2d at 1052). The Commission need only make findings sufficient to enable meaningful appellate review. The record clearly reflects that the Commission found in support of its conclusions that Davaz was injured on the job, that his future employability in the same occupation was thereby somewhat reduced, and that Davaz found comparable employment. These findings provide an ample basis for appellate review.

Costs to respondents.

JOHNSON and SILAK, JJ., and MICHAUD,· J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

I respectfully dissent. Although well-written and, at first blush, persuasive, the majority opinion, wherein it approves the disregard of the claimant's employability in the labor market where he lived at the time of his injury, breaks judicial rank with the spirit of the Workmen's Compensation Law and does

disservice to long-established case law precedent which properly holds that the Commission, in determining the diminished ability of a claimant to compete in an open labor market pursuant to I.C. § 72–430(1), should include in its analysis that the labor market wherein the claimant lived at the time of injury.

My first disagreement with the majority opinion stems from its erroneous premise that Idaho Code § 72–430(1) fails to clearly express our legislature's intent. Describing the factors to be considered by the Commission in determining permanent disability, I.C. § 72–430(1) states in relevant part:

**72–430. Permanent disability—Determination of—Percentages—Schedule.**

(1) Matters to be considered. In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographic area considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant, ...

The statute clearly requires the Commission, in the course of its deliberations regarding a permanent disability claim, to consider the disablement, any disfigurement, the occupation, and the age of the claimant *at the time of the injury or manifestation of occupational disease.* Under the rule advanced by the majority today, the Commission is then to examine the labor market surrounding the claimant's residence at a different time, the time of the hearing. I disagree

with this interpretation because it is patently unsound and not within the legislative directive. Had the legislature intended a different rule for evaluation of the labor market, it surely would have included this admonition in the statute, and could have easily done so.

This Court interpreted the relevant statutory provisions in a vastly different manner in *Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 565 P.2d 1360 (1977). There, we read into the statutory language of I.C. § 72–425 [1] the ability of the Commission to consider evidence of actual jobs in *both* the labor market near the residence of the claimant at the time of his injury, and the market near the residence to which he later moved. *Lyons,* 98 Idaho at 407 n. 3, 565 P.2d at 1364 n. 3. The laudable purpose of this ruling was to discourage injured claimants from moving to non-lucrative labor markets and nonetheless collecting permanent disability benefits. In this case, though, the Court has decided to eliminate the analysis of the labor market near the claimant's original residence, despite the fact that the only difference between this case and *Lyons* is that here, the claimant has, through diligence and sacrifice, moved to a more lucrative labor market than did the claimant in *Lyons.*

I find today's result unacceptable in light of: (a) the humane purposes of the Worker's Compensation Act; (b) the fact that it runs directly counter to the law in other jurisdictions; and (c) the fact that it provides a massive disincentive for injured employees to pull up stakes, seek out new work, and thereby assist themselves and their families.

The Arizona Court of Appeals faced precisely the facts that this Court faces today. In *Edwards v. Industrial Comm'n of Ariz.,* the claimant Edwards was injured and subsequently unable to secure employment in the city of Phoenix, where he lived. He then relocated to an unidentified sister state. (The Court of Appeals refrained from identi-

---

1. **I.C. § 72–425. Permanent disability evaluation.** "Evaluation (rating) of permanent disability" is an appraisal of the injured employee's present and probable future ability to engage in

gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72–430, Idaho Code.

**340**

fying the sister state out of fear that Edwards would once again lose his job). The Arizona Industrial Commission denied the claimant a loss of earning capacity because he was employed in the sister state. On appeal, the Court of Appeals reversed, holding that where an injured employee, in desperation, seeks and secures work elsewhere, such employee has still suffered a loss of earning capacity because he is unable to compete in the labor market where he resided at the time of the injury. *Edwards v. Industrial Comm'n of Ariz.*, 14 Ariz.App. 427, 484 P.2d 196, 199 (1971).[2]

Were this Court to hold the same today, such a ruling would be more consistent with the rule we announced in *Combs v. Kelly Logging*, 115 Idaho 695, 769 P.2d 572 (1989). The facts in *Combs* were very similar to those in this case, except that Combs' hearing before the Commission occurred *before* he was forced out of desperation to relocate to Missoula. Recognizing that "the test of reasonableness does not require the claimant to look for work beyond the general area in which he lives," this Court ruled that including Missoula in the labor market, even were Combs to relocate there, would "vitiate the humane purposes which the Workmen's Compensation Law was intended to further." *Combs*, 115 Idaho at 697–98, 769 P.2d at 576–77 (*quoting* 2 A. Larson, *Workmen's Compensation Law* § 57.61(d), at 245 (1985)). The majority recognizes the similarity of this case to *Combs*, but fails to acknowledge the irony. By actually relocating to Missoula, and incurring more expense and sacrifice on the part of his family, Davaz lost the disability compensation to which he would be entitled under *Combs* if he had only remained in Priest River until the hearing before the Commission took place. Surely this result also "vitiates the humane purposes which the Workmen's Compensation Law was intended to further."

Other courts have concluded, as we did in *Combs*, that injured employees should not

have to relocate in order to find substitute employment. *See, e.g., McMannis v. Mad-Ray Modulars, Inc.*, 289 So.2d 715, 718 (Fla. 1974) ("employer-carrier's somewhat bizarre argument ... that claimant should have moved in an attempt to find work, appears to be supported neither by case nor statutory law. In fact, ... it would appear to be repugnant to both Federal and State Constitutions"); *Fredenburg v. Control Data Corp.*, 311 N.W.2d 860, 864 (Minn.1981) ("An employee is not required to seek substitute employment outside his own community.")

Therefore, it is patently erroneous to now hold that, contrary to the determination of the *Edwards* Court, an injured employee who does relocate to find work should thereby lose that which we and other courts have determined that he or she should not lose. Just as we ordered the Commission in *Lyons* to examine both the labor market at the time of injury and at the time of hearing in its deliberations for permanent disability, I would order the Commission to evaluate both labor markets in this case.

I dissent.

BISTLINE, Justice, dissenting on Denial of Petition for Rehearing.

For much the same reason that I dissented to the opinion of *Davaz v. Priest River Glass* when it was issued by a majority of this Court, I dissent to the Court's denial of Davaz's petition for rehearing.

In my dissenting opinion, I pointed out the glaring inconsistencies between the analysis set forth in *Davaz* and the analysis set forth in *Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 565 P.2d 1360 (1977), and in *Combs v. Kelly Logging*, 115 Idaho 695, 769 P.2d 572 (1989). Today, I am even more convinced of the disparities and illogicalities among these cases.

Apparently, the rule in Idaho and the message that our opinions send to injured em-

---

2. The majority correctly points out that the purpose of permanent disability compensation in Idaho is to compensate an injured employee for his or her decreased capacity to engage in gainful activity. *Matthews v. Dept. of Corrections*, 121

Idaho 680, 683, 827 P.2d 693, 696 (1992) (citing *Graybill v. Swift & Co.*, 115 Idaho 293, 294, 766 P.2d 763, 764 (1988). Thus, the compensation that was at stake in *Edwards* served the same purpose as that which is at stake in this case.

ployees throughout this State may be summarized as follows. The Industrial Commission will determine the extent to which an injured worker is permanently disabled by an industrial injury or occupational disease by evaluating the nature of disablement, any disfigurement, the occupation of the claimant, and his or her age *at the time of the injury.* I.C. § 72–430. The Industrial Commission will then consider the diminished ability of the afflicted employee to compete in the open labor market where the employee makes his or her residence *at the time of the hearing before the Commission.* If, between the time of injury or manifestation of the occupational disease, the employee moves to a less profitable labor market, he or she is penalized because the Commission will evaluate permanent disability based on the new labor market and the market where the employee lived at the time of the injury or manifestation. This penalty occurs regardless of the reason for which the employee moved and is the result of our opinion in *Lyons v. Industrial Special Indem. Fund,* 98 Idaho at 407 n. 3, 565 P.2d at 1364 n. 3. If, however, the employee (such as Davaz in this case) is so motivated to find new employment that he or she uproots his or her life and family and moves to a *better* labor market after the injury and before the hearing, that employee's permanent disability is evaluated only with respect to the *new* labor market and is necessarily thereby decreased. Naturally, the determination of a "better" labor market is left to the Commission and in my view, requires far more detailed findings of fact than were present in the record of this case.

Perhaps this Court believes that employees who are reasonably well-paid, thanks to their diligence in job-hunting, should be prevented from "double-dipping" or receiving greater disability benefits than the injured persons who choose to remain in their original residence. The reasoning behind such a result is flawed, however. Consider the following scenario. Injured employees in this State will learn from the *Davaz* opinion that before the Industrial Commission hearing takes place, they should either stay where they lived at the time of their injury or manifestation of occupational disease, or move to a less profitable labor market. According to *Lyons,* both labor markets will be evaluated by the Commission when it determines the employee's permanent disability benefits. *Lyons,* 98 Idaho 403, 565 P.2d 1360. After our *Davaz* opinion, an injured employee will unquestionably *not* be so diligent as to find a job in a better-paying market (at least not before the Industrial Commission hearing) because that employee will undoubtedly receive lower disability benefits, with this Court's blessing. (Indeed, our decision in *Combs* expressly told injured persons that they do not have to relocate. *Combs v. Kelly Logging,* 115 Idaho at 697–98, 769 P.2d at 576–77). After the hearing, of course, an injured person can move to the better labor market and continue to receive higher benefits than will Neil Davaz. Thus, whatever financial considerations there were to the decision of the Commission and this Court will be eliminated. In addition, the injured person who delayed the move to a profitable labor market has lost the economic and possibly personal benefits which accompany gainful employment.

Not only is the decision in *Davaz v. Priest River Glass* a travesty of justice, it is patently illogical. I could not disagree more with the original decision and the denial by this Court of Davaz's petition for rehearing.