895 P.2d 571

Randall HERMANN and Laurie Hermann, husband and wife, Plaintiffs–Appellants,

v.

BLAINE COUNTY BOARD OF COMMIS-SIONERS ACTING AS the BLAINE COUNTY BOARD OF EQUALIZATION and Blaine County Assessor, Defendants–Respondents.

No. 21159.

Supreme Court of Idaho, Boise, November 1994 Term.

May 24, 1995.

Roger E. Crist, Ketchum, for appellants.

Douglas D. Nelson, Pros. Atty., Hailey, for respondents.

SILAK, Justice.

Randall and Laurie Hermann built a new residence on their land and removed their old home in 1988. They are contesting the legality of the Blaine County Assessor's action of retroactively increasing their 1991 real property tax from $3,790.04 to $7,404.28. The Hermanns appealed to the Idaho Board of Tax Appeals, and then to the district court, both of which upheld the County's tax assessment. For the reasons stated below, we affirm.

The Hermanns' main argument concerns I.C. § 63–306, under which late or retroactive entry of real property on the tax roll is possible if the real property has been "inadvertently omitted." The Hermanns contend, however, that in jurisdictions where land and improvements are treated as one taxable unit, the courts hold that the property was not "omitted," but was merely "undervalued," and therefore, not subject to retroactive taxation. Accordingly, the issue is whether the Hermanns' residence was "omitted property" under I.C. § 63–306.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The Hermanns own real property in Blaine County, herein described as "Lot 9." They had been living in an "A-frame" residence on Lot 9, and in September 1985 obtained a building permit from Blaine County for the construction of a new residence on Lot 9. In the fall of 1987, they obtained a permit to relocate their A-frame to another lot in Blaine County. In the spring of 1988, the Hermanns completed construction and moved into their new home, which was over three times as large as their A-frame. They did not report to the Blaine County Assessor (Assessor) that the new residence was occupied, as required under I.C. § 63–3905. The Assessor was unaware that a new residence had been constructed on Lot 9 until November of 1991. For the years 1988 through 1990, the County continued to tax the A-frame as the improvement on the Hermanns' property.

In the spring of 1991, the Hermanns received a 1991 taxpayers valuation assessment notice stating that Lot 9 had been valued at

$481,148.00 ($350,000 allocated to land, $131,-148 allocated to improvements). In the fall of 1991, they received a tax bill and receipt stating a tax of $3,790.04. In November 1991, they received a second 1991 taxpayers valuation assessment notice which stated that the value of the "building" on Lot 9 was $556,281, an increase of $425,113. The Hermanns do not dispute the assessed value of the new structure at $556,281. Rather, they argue their new home was not "omitted property" under I.C. § 63–306 and could not be included in their 1991 taxes. The County has not sought to recover additional taxes for the years 1988–1990, when the County continued to tax the A-frame as the improvement on Lot 9.

The Hermanns filed an appeal to the Blaine County Board of Equalization, and the matter was heard November 25, 1991. Also on November 25, 1991, the Hermanns received two new tax bills; one was labeled "corrected" tax bill which assessed a tax on the land of $3,022.40, and the second was the tax assessed on the newly constructed residence of $4,381.88, for a total tax of $7,404.28.

In December 1991, the Blaine County Board of Equalization sustained the increased assessment. The Hermanns appealed to the Idaho State Board of Tax Appeals. In March 1993, the Board of Tax Appeals upheld the decision of the Blaine County Board of Equalization, concluding that since the November 1991 assessment was the initial inclusion of the new residence on the tax rolls, it could be considered "omitted property" under I.C. § 63–306. The Hermanns then appealed to the district court which again affirmed, basing its ruling on I.C. § 63–3901 *et seq.* The Hermanns filed a motion to alter and amend the district court's ruling, which the district court also denied. The Hermanns appeal both the district court's original ruling and its decision denying the motion to alter or amend.

## II.

## A NEW RESIDENCE MAY CONSTITUTE "INADVERTENTLY OMITTED" PROPERTY UNDER I.C. § 63–306

In construing I.C. § 63–306, our primary duty is to give effect to the intent and purpose of the legislature. *E.g., Grand Canyon Dories v. Tax Comm'n,* 124 Idaho 1, 855 P.2d 462 (1993). A court must construe a statute as a whole and consider all sections of applicable statutes together to determine the intent of the legislature. *Davaz v. Priest River Glass Co.,* 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994). It is incumbent upon the court to give the statute an interpretation that will not deprive it of its potency. *Id.*

We start with the premise that all property in Idaho is subject to assessment and taxation, unless expressly exempted. I.C. § 63–101. The assessor is duty-bound to make "diligent inquiry and examination to ascertain all the real property" and to "not allow[ ] anyone to escape a just and equal assessment through favor, reward or otherwise." I.C. § 63–319. The law requires real property to be assessed and entered on the assessment tax roll by the fourth Monday of June each year. I.C. § 63–306. However, late or retroactive entry on the assessment roll is possible if real property has been "inadvertently omitted." *Id.* The assessor may enter omitted property on a subsequent assessment role and submit it at the board of equalization meeting on the fourth Monday of November of the current year. Taxes so assessed must then be paid before June 20th of the following year. *Id.*

In general in Idaho, all taxable properties are assessed annually. However, only twenty percent (20%) of the taxable properties are actually appraised each year,

> ... resulting in a complete appraisal of all taxable property every five (5) years. The results of the annual appraisal of twenty percent (20%) of taxable property shall be used to index all property not actually appraised each year so as to reflect current market values....

I.C. § 63–221. Hence, any particular parcel may be inspected and appraised only once every five years. Under this system, improvements could be erected on theretofore vacant land and escape assessment and taxation until the five-year appraisal is performed, unless sooner discovered by the as-

sessor's office. The record reflects a similar situation here. The Hermanns constructed their new home in 1988, but were assessed from 1988–1990 based on a 1985 appraisal of their smaller A-frame.

However, the Idaho legislature has indicated an intent to avoid such situations and tax newly constructed improvements beginning in the year of construction. Under I.C. § 63–3901 *et seq.*, an owner of a new residence pays an "occupancy tax" for the year in which the residence was constructed. The occupancy tax is prorated so that the owner pays a tax only for the part of the year when the improvement was occupied. I.C. § 63–3903. The legislature placed the burden of notification on the owner. The owner "shall, on or before the date of first occupancy, report to the county assessor ... the fact that the improvement has been occupied." I.C. § 63–3905. As soon as practical thereafter, the assessor is to appraise the property to determine the amount of the occupancy tax. Under I.C. § 63–3908, if the owner fails to notify the assessor of the date of occupancy, there may be imposed a penalty of 5% of the occupancy tax for each month that no notice was given up to a maximum of 25%. This penalty is in addition to the occupancy tax amount. *Id.*

In construing I.C. § 63–3901 *et seq.*, the district court determined that the legislature intended for owners, like the Hermanns, to be liable for taxes on the improvement from the date of occupancy, and if they do not notify the assessor of the date of occupancy, they are still liable for the tax, plus interest and penalties. We agree with the district court's analysis of I.C. § 63–3901 *et seq.*

There is no dispute that the Hermanns failed to notify the assessor of their occupancy of the new house, as required by I.C. § 63–3905. Their failure to give notice does not relieve them of paying the appropriate tax, and in addition, could have subjected them to penalties and interest accruing on the unpaid tax. The question the Hermanns raise about whether new improvements are separately taxable under I.C. § 63–306 has been answered by statute in I.C. § 63–3901 *et seq.* The legislature has expressly levied a tax on newly constructed "residential and commercial structures," I.C. § 63–3902, which is separate from taxes on the land. The result should be no different under I.C. § 63–306. *See also* I.C. § 63–207 ("Land and improvements must be assessed separately ...") Statutes in *pari materia* are construed together. *E.g. Grand Canyon Dories v. Tax Comm'n*, 124 Idaho 1, 4, 855 P.2d 462, 465 (1993). The legislature has indicated an intent not only to allow retroactive taxation of improvements, but also the imposition of penalties and payment of interest. *See also*, I.C. § 63–207 (providing for double assessment of intentionally concealed property which escaped assessment). To hold otherwise would deprive both I.C. § 63–3905 and I.C. § 63–306 of their potency and would be unfair to other tax paying landowners. Accordingly, we hold that when a landowner builds a new residence and fails to notify the assessor of the date of occupancy pursuant to I.C. § 63–3905, the new residence can constitute "omitted property" within the meaning of I.C. § 63–306. *See Municipality of Anchorage v. Alaska Distribs. Co.*, 725 P.2d 692, 694–95 (Alaska 1986).

The Hermanns invite the Court to ignore I.C. § 63–3905, and instead construe I.C. § 63–306 to determine that the legislature did not intend for land and improvements to be separate taxable units. Because their land and the A-frame were actually taxed each year through 1991, their property has been merely "undervalued" and not "omitted," the argument goes. *Citing Leyh v. Glass*, 508 P.2d 259 (Okla.1973); *Tradewell Stores, Inc. v. Snohomish County*, 69 Wash.2d 352, 418 P.2d 466, 467 (1966).

The Hermanns' case authorities are distinguishable. In those cases, there is no indication that the state legislature had enacted laws to separately tax newly constructed improvements and to require the landowner to give notice to the assessor. *Leyh v. Glass, supra*, 508 P.2d at 260–61 (taxpayers not required by statute to list real property for assessment); *Tradewell Stores, supra*, 418 P.2d at 467 (omission from assessment must be evidenced from assessment roles, owners who pay tax amount billed should be entitled to rely on record made); *compare Municipality of Anchorage, supra*, 725 P.2d at 695

(statutory requirement that taxpayer advise assessor of errors or omissions in assessment). The Hermanns further contend that the County has never imposed any tax in 1988 or in 1991 under I.C. § 63–3901 *et seq.*, and that the district court lacked authority to do so. Even if that contention were correct, it does not follow that I.C. § 63–3901 *et seq.* is wholly irrelevant to a proper construction of I.C. § 63–306. Moreover, any procedural misstep by the Assessor does not automatically create a windfall for the Hermanns. The Hermanns do not contend the corrected assessment is too high. We have considered and are not persuaded by the Hermanns' remaining arguments. The increased assessment and tax on Lot 9 of November 1991 will be sustained. The new residence constitutes "inadvertently omitted" property under I.C. § 63–306.

### III.

### CONCLUSION

The district court's rulings upholding the County's corrected November 1991 tax assessment, which included the new residence, are affirmed.

No attorney fees on appeal, costs on appeal to respondent.

TROUT, J., and MOSS, J. Pro. Tem., concur.

McDEVITT, C.J., concurs in the result reached.

JOHNSON, Justice, concurring in the result.

I concur in the result reached in the Court's opinion. I do not agree with the reliance on *Municipality of Anchorage v. Alaska Distribs. Co.*, 725 P.2d 692, 694–95 (Alaska 1986). While I honor the acumen of the members of the Alaska Supreme Court, it is our law, not theirs, that we are interpreting. In my view, our jurisprudence should find its basis in the process of statutory and constitutional interpretation prescribed by the decisions of this Court, as well as common law pronouncements, when necessary.

Likewise, I see no purpose in distinguishing *Leyh v. Glass*, 508 P.2d 259 (Okla.1973) and *Tradewell Stores, Inc. v. Snohomish County*, 69 Wash.2d 352, 418 P.2d 466, 467 (1966). We are not obliged to reconcile our view with the decisions of those courts.