632 P.2d 558

Richard R. WELLS, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Anderson Clayton & Company,
Respondent-Employer,

Ranger Insurance Company c/o Arizona
Adjustment Agency,
Respondent-Carrier.

No. 1 CA–IC 2395.

Court of Appeals of Arizona,
Division 1, Department C.

July 30, 1981.

Van Baalen Law Offices by Peter T. Van Baalen, Phoenix, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca by Merton E. Marks, Barry Fish, Phoenix, for respondents employer and carrier.

WREN, Chief Judge.

Petitioner has brought this special action to challenge an award entered by the Industrial Commission which granted his petition for rearrangement or readjustment of compensation and increased his permanent partial disability benefits. He contends that the increase was inadequate and not supported by the evidence, since the respondent employer and respondent carrier failed to show that employment was available to petitioner in certain named occupations in direct competition with *able-bodied* applicants.

On September 25, 1975, petitioner injured his back while employed as a dairy products mixer-operator by respondent employer. His workmen's compensation claim was accepted for benefits by the carrier. On October 14, 1977, the Commission, following various proceedings, ultimately entered an award finding that petitioner had sustained a 15% general physical functional disability and had suffered a 17.05% reduction in earning capacity, entitling him to the sum of $78.40 per month. On May 17, 1979, petitioner filed a petition for rearrange-

ment or readjustment. The petition was denied and a request for hearing followed. At the hearing, held on November 29, 1979, petitioner, his attending orthopedic surgeon, a psychiatrist, an employment expert and three lay witnesses testified.

On December 20, 1979, the hearing judge granted the petition, determining that petitioner had a 22.29% reduction in earning capacity, and awarding him an increase in permanent partial disability benefits from $78.40 per month to $102.48. This figure was based on a "rolled back" wage of $649.50 as an "electronic sub-assembler" or "cable connector assembler." Petitioner thereafter filed this appeal.

In the prior award of October, 1977, the hearing judge had determined that the petitioner, because of the restrictions placed upon him by his attending physician, Ray Fife, M.D. could not lift over ten pounds, could not perform tasks requiring any continuous lifting or bending, could not walk a distance in excess of one-half mile, could not stand for more than one-half hour, could not sit for more than three hours and needed to change positions frequently. Petitioner was, however, found capable of continuing to perform the work of mixer-operator in a lighter trade than he had performed prior to his accident. This finding was premised upon the testimony of Frederick E. Brick, a vocational expert, who stated that employment was then available for petitioner as a mixer-operator at several different companies which Brick named.

Following the 1977 award petitioner testified that he continued his efforts to seek employment by contacting the prospective employers indicated by Brick, but that he was unsuccessful. As a result of his inability to obtain work, he filed the petition for rearrangement under review here.

In the November 1979 hearing Brick again testified for the respondents. On this occasion, however, he expressed the opinion that petitioner could no longer perform the job mixer-operator since the companies in that business had increased their lifting requirements. However, he opined that petitioner would be able to perform adequately in three types of occupations: (1) electrical mechanical assembler (2) cable connector assembler, and (3) electric sub-assembler, indicating that he had in fact contacted various firms which he identified, and inquired as to whether they would hire someone with the physical limitations of petitioner and the specific restrictions which Dr. Fife had placed upon him. These firms, according to Brick, had responded that they would.

Petitioner argues, however, that this proof was inadequate to establish reasonable employment opportunities, *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission*, 25 Ariz.App. 117, 541 P.2d 580 (1975), in that it did not include evidence that petitioner could secure such employment notwithstanding competition from able-bodied persons. *Dean v. Industrial Commission*, 113 Ariz. 285, 551 P.2d 554 (1976). Petitioner further argues that the hearing judge erred in the following ruling on the issue of competition:

Q. Isn't it true that you did not ask this individual at Talley Industrial that if he had an applicant with the disabilities or restrictions such as with a ten-pound lifting restriction, and if he also had an applicant for the same job who had no disability, that he would equally hire the man with the disabilities as the man without the disabilities; isn't that true? You didn't ask that?

A. No.

Q. Isn't it true that you didn't ask that question to any of the persons you talked with?

MR. MARKS: I would object on the grounds that is legally irrelevant. The *Dean* case states that one of the things that has to be considered in an LEC case is whether a prospective employer will hire someone with the type of impairment that's involved in the case. It does not state that it must be established that the company would hire that individual in preference to any other type of individual.

MR. VAN BAALEN: I said "equally." What the *Dean* case is is in a competitive situation with a fully able-bodied man; that he would just as readily hire the

disabled man as a fully able-bodied man. That is exactly what the *Dean* case says and other cases.

MR. MARKS: I think the Hearing Officer can read the case for herself.

THE HEARING OFFICER: I'll sustain the objection.

R.T. November 29, 1979 at pages 133–134.

Quoting from *Davis v. Industrial Commission*, 82 Ariz. 173, 309 P.2d 793 (1957), our Supreme Court stated in *Dean v. Industrial Commission, supra,* the general proposition that:

> "[t]he object is to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much. To support a finding in this respect the commission must have evidence that will at least demonstrate the reasonableness of the determination made." *id.* 113 Ariz. at 287, 551 P.2d at 556.

Then, with reference to the facts before it, *Dean* noted:

> The evidence fails to show that petitioner would be successful in obtaining a pest control position. Material evidence to show, with reasonable certainty, that a claimant could secure a position would include, but is not limited to, the competition for available positions, *Hughes v. Industrial Commission,* 3 Ariz.App. 51, 411 P.2d 474 (1966), and the likelihood that employers will hire someone with a previous disability although he is now fully qualified to perform the work. Without any evidence in this regard, the Commission's finding is unreasonable. *id.*

■ This language, petitioner contends, makes it incumbent upon the respondents to show that petitioner would be able to secure employment in a fully competitive market with non-disabled applicants for the same job; that respondents must prove that the prospective employers which they contacted would "just as readily hire the disabled man as a fully able bodied man." We disagree and hold that the objection was properly sustained.

We do not find the phraseology "competitive labor market", used by the court in *Dean,* to mean the carrier or employer must show that, in "head-to-head" competition with non-disabled persons for a specific job, the handicapped applicant would have a fully equal opportunity to be hired. There need only be evidence, as noted in *Dean,* of "the likelihood that employers will hire someone with a previous disability although he is now fully qualified to perform the work." 113 Ariz. at 287, 551 P.2d at 556. That case simply held that the evidence there failed to show that the claimant would be successful, as contended by the carrier, in obtaining a pest control position, i. e. that the duties of the job were commensurate with his limited educational and technical training, and with the physical restrictions resulting from his injuries.

■ Furthermore, the record before us reflects that the employment opportunities alluded to by Brick were reasonably available to petitioner in competition with other job seekers. As examples

[respondents' attorney]

Q. In this particular case, did you inquire of the various firms that you contacted whether they would hire someone with the general impairment that Mr. Wells has and with the specific limitations of lifting, sitting, walking and et cetera that Doctor Fife gave him?

A. Yes, I did.

R.T. November 29, 1979 at page 110

\* \* \* \* \* \*

Q. In talking to Mr. Shahlin, did you describe the impairments and limitations that Doctor Fife outlined for Mr. Wells? Did you ask whether Talley Industries would hire somebody with his limitations?

A. Yes, I did.

Q. What was the answer?

A. The answer is they would. They have on occasion, let me put it that way. *id.* at pages 112–113

\* \* \* \* \* \*

Q. How many openings were there at Talley Industries let's say in the last preceding 12-month period?

A. I have from January 1 of this year. The previous openings, there were 43.

id. at page 108

\* \* \* \* \* \*

Q. In the course of your contacts with these people, did you ascertain whether or not Western Electric Cable Works would employ people who had suffered an industrial injury and had the limitations that Mr. Wells has according to Doctor Fife?

\* \* \* \* \* \*

THE HEARING OFFICER: Did you specifically mention the applicant?
THE WITNESS: Not by name.
[petitioner's attorney]: No.
THE WITNESS: But by disability.

May I just add that Western Electric and some of the larger corporations now do have a policy of trying to hire more of the handicapped to meet some federal requirements.

\* \* \* \* \* \*

Q. What is the policy of Western Electric and other similar plants with respect to hiring people with physical impairments?
A. I think under the Vocational Rehabilitation Act of 1973, that a number of disabled should be hired, but IRS came out in March of this year with a tax credit for every handicapped person that is hired by a person, and it's a two-year tax credit I think.

Many times larger corporations have found it to their advantage to hire disabled persons purely from a monetary viewpoint more than humanitarian.
Q. Did you ascertain whether Western Electric would hire employees with the type of physical impairments and the limitations that Mr. Wells has?
A. Yes, they do
id. at 116–118.

\* \* \* \* \* \*

Q. In the case of each of the company officials you have talked to at these three places, did you outline Mr. Wells, the fact that he had an industrial accident and the impairment and limitations as described by the doctor and if such a person would be hired?

A. I did so in my phone conversations with them last week, yes.
Q. What was their advice?
A. Again, they're in the same area of trying to hire some more disabled people. They would certainly consider it.
id. at page 122

In our opinion such evidence fully satisfied the requirements of *Dean* and constituted substantial evidence to support the award. Respondents met their burden of proof that there existed work within petitioner's limitations and that openings for such work were reasonably available to him.

As stated in *Germany v. Industrial Commission*, 20 Ariz.App. 576, 514 P.2d 747 (1973):

The contention that the carrier must present evidence that there is open and waiting a job for this particular workman, taking into consideration not only his industrially-related physical condition, education, occupational history, the type of work he is able to perform and such related factors, but also such intangibles as his personal appearance, his motivations for work, his temperament and personality, is rejected. If petitioner's contention were followed to its logical conclusion, the carrier would be forced to become an employment agent—having available a specific employer ready, willing and able to hire this specific employee. Such a result is not required by our statutes or case law.

\* \* \* \* \* \*

If the carrier presents evidence that there is employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training, we hold that the carrier has met its burden of showing an earning capacity.
id. at 580, 514 P.2d at 751.

The award is affirmed.

O'CONNOR and FROEB, JJ., concur.