672 P.2d 175

Garold D. ROACH, Petitioner,

v.

INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Asarco, Inc., Respondent Employer,

State Compensation Fund, Respondent
Carrier.

No. 16380–PR.

Supreme Court of Arizona,
En Banc.

Oct. 26, 1983.

Spencer K. Johnston, Phoenix, for petitioner.

James A. Overholt, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondents employer and carrier.

FELDMAN, Justice.

Garold D. Roach (claimant) was injured in an industrial accident on November 30, 1978. An Industrial Commission award was affirmed by the court of appeals in a memorandum decision. (No. 1 CA–IC 2673, filed October 6, 1982.) The claimant now petitions this court for review, challenging the sufficiency of the award. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Ariz.R.Civ.App.P. 23, 17A A.R.S. The issue presented for review is whether the findings of the Commission with respect to reduction of earning capacity are supported by substantial evidence. We hold that they are not.

Claimant was employed as a driller/driller's helper by ASARCO near Casa Grande, Arizona when he suffered an injury on November 30, 1978. At that time his average earnings were $1,250 per month. Claimant sustained injuries to his neck, left shoulder and right arm. He underwent surgery and was treated by several physicians before being discharged from treatment with a 10% general disability on April 7, 1980. He was left with physical disabilities which include global arm pains, muscle spasms and an occasional "locking" of the arm. The claimant unsuccessfully sought other employment with ASARCO but did not look for jobs with other employers in the area.

On May 7, 1980, claimant moved to Texas and began work as a dispatcher-clerk in his brother's paving business. He earned the minimum wage. On November 14, 1980, the Industrial Commission awarded the claimant $434.89 per month based on his unscheduled permanent partial disability resulting in a reduced earning capacity of 62.26%.

█ Roach's employment in Texas and unsuccessful subsequent attempts to find other work in Texas (Finding 10) were "reasonable efforts to secure suitable employment in the area of his residence." *Dean v. Industrial Commission*, 113 Ariz. 285, 287, 551 P.2d 554, 556 (1976). Thus, as both parties and the court of appeals have recognized, the burden shifts to the employer or carrier to show the availability of suitable employment. *Id.*

On February 3, 1981, the insurance carrier protested the award and requested a hearing. The tardiness of this request was never raised as an issue in the case. The hearing was held on June 25, 1981.

█ The findings of the administrative law judge which are at issue in this case were largely drawn from the testimony of a vocational consultant retained by the employer. The consultant personally conducted a "labor market survey" in the area around Casa Grande. She obtained no response from two Texas agencies that she contacted.[1] The predicate for the survey was based upon information obtained from the claimant and two of his treating physicians. The consultant testified concerning several "occupational availabilities" and supplied estimates of the number of openings or rates of turnover for at least four jobs. One such job was that of correctional service officer (CSO) at the Arizona State Prison at Florence. There had been 471 openings for this position between March, 1980 and March, 1981.

The administrative law judge concluded that the survey indicated "job availabilities [for the CSO position] to at least $962.58 per month" (Finding 15) and reduced claimant's lost earning capacity accordingly. Based upon the presumed earnings for the CSO position, the award recognized only a 22.99% reduction of earning capacity. Claimant sought review.

█ The court of appeals affirmed the Industrial Commission's award. The court clearly ennunciated the correct legal test for such cases. That test has two parts: "that [1] there is employment reasonably available [2] which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training. . . ." *Germany v. Industrial Commission,* 20 Ariz.App. 576, 580, 514 P.2d 747, 751 (1973). The court determined that the record contained "substantial evidence" to meet this test. After reviewing the record, we cannot agree.

Over 20 years ago this court stated that it would, and on at least eight occasions had, set aside an Industrial Commission award not supported by "competent evidence."

*Allen v. Industrial Commission,* 87 Ariz. 56, 66, 347 P.2d 710, 717 (1959). The problem of formulating or applying the legal test to determine what constitutes "substantial" or "competent" evidence on the record in reviewing Industrial Commission awards has continued as a major issue in disputes over determination of lost earning capacity. *See, e.g., Dean, supra; Sproul v. Industrial Commission,* 91 Ariz. 128, 370 P.2d 279 (1962); *Le Duc v. Industrial Commission,* 116 Ariz. 95, 567 P.2d 1224 (App.1977); *La Rue v. Industrial Commission,* 20 Ariz.App. 498, 514 P.2d 251 (1973). Because of recurrent problems concerning the nature of the "substantial evidence" needed to support an award regarding lost earning capacity, we granted review to clarify the issue.

█ In meeting the two-pronged test of *Germany, supra,* findings of the Industrial Commission are deemed to be based on substantial evidence when (1) the job requirements (of the suggested job upon which the award is calculated) are related to the claimant's disability, education and training *with specificity, Dye v. Industrial Commission,* 23 Ariz.App. 68, 530 P.2d 914 (1975) (Jacobson, J. concurring), and (2) the reasonable availability of the job upon which the award is calculated is demonstrated *with at least express reference* to the impaired worker's ability to compete for that job and the likelihood that the potential employer will hire someone with a previous disability. *Dean,* 113 Ariz. at 287, 551 P.2d at 556. "Abstractions are not sufficient." *Dye, supra,* 23 Ariz.App. at 72, 530 P.2d at 918, quoted in *Zimmerman,* 137 Ariz. at 582, 672 P.2d at 926.

In *Zimmerman,* we examined and approved the legal principles which had been postulated in *Germany, Dean* and *Dye,* holding that the ultimate issue is to determine whether there is a probability that despite his residual physical impairments the injured worker can sell his services with regularity in a competitive labor market.

---

1. Claimant having moved from the place at which the injury occurred, the carrier could show other, suitable and available employment at either the previous residence or the new residence. *Zimmerman v. Industrial Commission,* 137 Ariz. 578, 672 P.2d 922 (1983).

Applying that test to the *Zimmerman* facts, we held that evidence which established only that the claimant would be one out of eleven qualified applicants for a single position was insufficient to meet the test. The case at bench presents a corollary of the *Zimmerman* problem—what degree of specificity is required with regard to evidence on each of the parts of the *Germany* test?

## SUITABILITY

In the case at bench, all testimony on the subject came from the carrier's vocational consultant, who offered only the following concerning the suitability of the CSO job for a person with claimant's residual injuries: (1) the personnel director at the prison characterized the physical demands of the job as "light duty" and (2) the personnel assistant considered a person such as the claimant to be "a qualified applicant." The term "light duty" was not defined. The specific tasks expected of a CSO were not described. What made claimant "a qualified applicant" was not explained. The conclusions were not those of the labor consultant who testified, but of the prison personnel director to whom she had talked. All that can be determined from this record is that the prison personnel director who was given claimant's physical limitations thought that there was a "light duty" job which claimant would be "qualified" to perform. The personnel director did not testify and the labor consultant who did testify neither knew anything about the job nor anything about the facts upon which the personnel director had based his conclusions.

More than this is required to show that the CSO job is one that the claimant can "reasonably be expected to perform." [2]   In

*Le Duc, supra,* a graduate student interviewed waitresses at five Tucson businesses and filled out forms based on these interviews. The court of appeals stated that, "[w]hile these forms purport to show the amount of time spent in standing, sitting, walking, carrying, etc., they are non-specific as to the actual duties of the job." *Id.* at 98, 567 P.2d at 1227. For this reason and because there was no showing of job availability, the court of appeals found the hearing officer's decision concerning the dollar amount of loss of earnings "unsupported by reasonable evidence," *id.* at 99, 567 P.2d at 1228, and set aside the award.

■ The generalizations in the case at bench ("light duty," "qualified applicant") are even more abstract than the inadequate evidentiary showing of job suitability in *Le Duc.* These generalizations are of the kind deemed "to be an insufficient foundation to meet the test of materiality." *Dye,* 23 Ariz. App. at 72, 530 P.2d at 918; *Zimmerman, supra.* Thus, there is no substantial evidence in the record to support a finding that the CSO job is one that the claimant may "reasonably be expected to perform" in light of his residual disabilities.

## REASONABLE AVAILABILITY

The only evidence pertaining to the availability of the CSO position was that there had been 471 openings during a one-year period. This fact, taken alone, indicates an ample number of openings. The administrative law judge found it not only persuasive, but conclusive, of the "reasonable availability" of CSO positions. The flaw in basing job availability on the bald statement that any specific number of openings

---

**2.**  Arizona courts have rejected the opinion testimony of physicians regarding the abilities of an injured worker to function in a specific job because physicians generally lack expertise in regard to the job requirements. *Adkins v. Industrial Commission,* 95 Ariz. 239, 243, 389 P.2d 118, 120 (1964); *Davis v. Industrial Commission,* 16 Ariz.App. 535, 494 P.2d 735 (1972).

The rule is otherwise where the physician has some knowledge of job requirements. *Powell v. Industrial Commission,* 102 Ariz. 11,

14, 423 P.2d 348, 351 (1967) (a doctor's opinion is admissible "because of special knowledge by a doctor of the physical and mental requirements of a claimant's vocation."). This treatment of physicians' opinion testimony highlights the court's concern for specific matching of job requirements, skills and physical impairment criteria in determining whether a particular job is one the claimant can "reasonably be expected to perform."

has occurred is perceptively exposed by Judge Jacobson's concurrence in *Dye:*

> [T]estimony that " 'X' number of jobs as a dishwasher are available in the Phoenix area a month" is meaningless unless there is some indication as to the number of individuals seeking that employment. If there are 50 openings for a dishwasher which are drawing 5,000 applicants, it cannot be said that one chance in a hundred makes the job "reasonably available."

*Dye,* 23 Ariz.App. at 72, 530 P.2d at 918.

In determining the "reasonable availability" of employment in loss of earning capacity cases, Arizona has long adhered to a "competitive labor market" model. *Davis v. Industrial Commission,* 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). Such a model requires that both supply and demand be considered. The mere fact that "X" number of openings exist satisfies but one of the elements in the supply and demand equation. The need for evidence regarding competition for the available positions was explicitly settled in *Dean,* 113 Ariz. at 287, 551 P.2d at 556.

There must also be evidence with respect to how the worker's disabilities will affect his ability to compete for the positions.[3] In *Wells v. Industrial Commission,* 129 Ariz. 471, 632 P.2d 558 (App.1981), a Commission award was challenged. The petitioner's contention in that case was that "respondents must prove that the prospective employers ... would 'just as readily hire the disabled man as a fully able bodied man.' " *Id.* at 473, 632 P.2d at 560. The court of appeals refused to adopt such a stringent standard, stressing the language in *Dean* which focuses on the probability that an employer will hire a fully qualified worker despite a previous disability. *Id.* The *Wells* court quoted extensively from the respondent's employment expert concerning the willingness of the prospective employers interviewed in that case to hire "people with physical impairments" and cited the expert's opinion on the positive effect the Vocational Rehabilitation Act has had on the employment decisions of the prospective employers. *Id.* at 473–74, 632 P.2d at 560–61. The court concluded that "such evidence fully satisfied the requirements of *Dean* ...." *Id.* at 474, 632 P.2d at 561.[4] The case at bench is easily distinguished from *Wells.* In the instant case there was no testimony on the willingness of the Arizona State Prison to hire someone with a previous disability. While we assume that agencies of this state do not practice employment discrimination, we find nothing affirmative in the record regarding the likelihood of the Arizona State Prison to hire persons with previous work-related injuries which affect the use of both

---

3. Arizona courts have recognized that previously disabled workers often suffer employment discrimination. This recognition is best illustrated by *Edwards v. Industrial Commission,* 14 Ariz.App. 427, 484 P.2d 196 (1971). In that case, a worker covered under the Arizona Workmen's Compensation Act was fired from a job he obtained in California when his prior industrial-related injury in Arizona was discovered. *Id.* at 428, 484 P.2d at 197. This court explicitly refrained from mentioning the name of the state where Edwards was subsequently employed because of his fear that he would again be fired. *Id.*

4. While *Wells* was correctly decided, we are not convinced that the holding in *Dean* was correctly characterized by the *Wells* court. In determining the reasonable availability of suitable work, *Dean* does mean that there usually must be a showing that the impaired worker would have an equal *opportunity* to be hired in competition with others. Preference for injured workers is not required, but less than equal *opportunity* generally puts the impaired worker at a competitive disadvantage. It was recognized by this court in *Dean* that such a disadvantage affected the "reasonable availability" of jobs for impaired workers.

We recognize, of course, that there may be instances where even though the impaired worker does not have equal opportunity to compete, a job may nevertheless be available because there are more jobs than workers. We recognize, also, that there may be instances where an impaired worker will be at a competitive advantage with regard to a particular job. What the law requires is that the finder of fact not make assumptions and that he or she consider specific evidence on the affect of the impairment on the worker's ability to compete.

arms for jobs which presumably[5] require some degree of strength or mobility. "Reasonable inferences from the evidence will be supported, but speculation based on nothing in the record cannot be indulged." *Nelson v. Industrial Commission,* 134 Ariz. 369, 376, 656 P.2d 1230, 1237 (1982).

We stress the paucity of evidence on job availability in the hearing record. When the carrier's expert was asked why there had been so many openings for the CSO job during the prior year, she could only speculate. She was not able to obtain the employment statistics for the prison. She relayed no information regarding the number of applicants. She could not answer a question concerning the possible hazards which the job involved. She did not explain the duties of a CSO. She did not explain whether all CSO positions involve the same duties. She did not express any final opinion with regard to availability (*see* Ariz.R. Evid. 704, 705, 17A A.R.S.) and, from this record, probably did not have the factual knowledge to serve as a foundation for such an opinion. She did no more than relate the meagre information she had obtained.

In the case at bench, the evidence concerning either part of the *Germany* test was abstract and non-specific. As a result, it did not rise to the level of "substantial" or "competent" evidence. Accordingly, the opinion of the court of appeals is vacated, the award of the Commission is set aside, and the cause is remanded.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

**5.** We use "presumably" because the record does not indicate just what services a CSO must perform.