918 P.2d 1093

**Rogalio PARAMO, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Salyer American Fresh, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 95–0008.**

Court of Appeals of Arizona, Division 1, Department D.

June 4, 1996.

Barton L. Baker, Yuma, for Petitioner.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

State Compensation Fund by W. Smith Michael, Jr., Tucson, for Respondents Employer and Carrier.

## OPINION

PATTERSON, Presiding Judge.

In this special action review of an Industrial Commission decision, the petitioner-employee ("claimant") argues that the award by the Administrative Law Judge ("ALJ") was not supported by reasonable evidence. Specifically, he argues that the job of lettuce taper was not suitable and was not reasonably available to him. For the following reasons, we find that the job was suitable and reasonably available and affirm the award.

## I. FACTS AND PROCEDURAL HISTORY

The claimant was employed by the respondent employer, Salyer American Fresh ("Salyer"), as a field laborer. In order to work twelve months a year, the claimant traveled between Yuma, Arizona, and Salinas, California, according to the lettuce season. On February 16, 1993, the claimant suffered an industrial injury to his lower back while lifting a lettuce box. A compensation claim was accepted and the State Compensation Fund ("Fund") issued a notice of average monthly wage in the amount of $1743.45 per month based on twelve months per year of steady employment. The claim was later closed with a 7% unscheduled permanent partial impairment.

The Industrial Commission entered an award for an unscheduled permanent partial disability and a loss of earning capacity of 57.75%. This award assumed that the claimant was able to obtain light janitorial or maintenance work 40 hours per week at a minimum wage of $4.20 per hour. The Fund requested a hearing, and several hearings were held. Testimony was presented by the claimant, his treating physician and two labor market experts. The claimant also presented evidence that after the injury, he returned to work with Salyer as a lettuce taper. The claimant further testified that he quit the lettuce taper position after six days because it required physical activity that exceeded the limitations imposed by the industrial injury. After considering the evidence and testimony, the ALJ concluded that:

7. [t]he preponderance of credible evidence establishes that the applicant could perform the duties of a lettuce taper, a job which is both suitable and available and [the claimant] has not sustained a loss of earning capacity as a result of the subject industrial injury.

## II. DISCUSSION

The claimant asserts that the ALJ erred in his determination because the job of lettuce taper is seasonal employment which is available only part of the year in Yuma, Arizona, and because it requires physical activity in excess of his treating physician's physical limitations profile.

To establish a loss of earning capacity, the objective is to determine as nearly as possible whether the claimant can sell his services in the competitive labor market and for how much. *Davis v. Industrial Comm'n,* 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). The burden of proving a loss of earning capacity is on the claimant and may be met

by evidence that the claimant is unable "to perform the job at which he was injured and to get other work which he can perform in light of his physical impairments." *See, e.g., Zimmerman v. Industrial Comm'n*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983).

■ If there is testimony that these efforts were made and were unsuccessful, "the burden of going forward with contrary evidence to establish the availability of suitable employment shifts to the employer and the carrier." *Id.* The employer must then make a showing that "there is employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training. . . ." *Germany v. Industrial Comm'n*, 20 Ariz.App. 576, 580, 514 P.2d 747, 751 (1973). For purposes of clarity, we treat separately the two requirements of suitability and availability.

### A. Suitability of Employment

■ Suitability of employment requires that the following two factors, at a minimum be shown: "(1) the physical requirements of the particular employment under discussion" with specificity; and "(2) what education or training is required for the suggested employment." *Zimmerman*, 137 Ariz. at 582, 672 P.2d at 926.

Here, Dr. Anderson, the treating physician, testified that because of the industrial injury, the claimant has physical limitations: The claimant can work eight hours per day and forty hours per week, but he can sit or stand for only two hours at a time, can walk one to two miles, can lift up to twenty pounds frequently, or a maximum of fifty pounds occasionally, but must change positions frequently and should avoid bending or any activity which bounces or jars his back. Based on a description of the lettuce taper job, Dr. Anderson stated that he felt that the claimant could perform that work two hours at a time, with ten minute breaks in between, for up to eight hours. Dr. Anderson emphasized, however, that the claimant could not perform the job if it required him to bend his back.

The claimant testified that after Dr. Anderson released him for work, he contacted Salyer and returned to work for six days as a lettuce taper. The claimant stated that he quit because that job involved walking more than two miles at a time behind a lettuce processing machine and bending at the waist to pick lettuce up off the ground. When asked the duties of the position by his attorney, the claimant stated:

A. We were taping the lettuce. That's what it's called. Sometimes the lettuce is in [sic] the floor so we have to bend and pick it up and put the tape [sic] and turn it around and we're walking behind the trucks.

Q. Okay. And do you—does that type of job require that you work for more than two hours at a time or did it?

A. Since the start—since I started working my waist was really hurting and I did try to finish the day but it was with a lot of pain.

Q. Okay. The question I asked was, did it require that he [sic] work more than two hours at a time?

A. Yes.

The claimant further testified that although he had looked for work in Yuma he had not found a job.

■ Mr. Johnson, a labor market consultant for the Fund, contradicted the claimant's testimony regarding the physical requirements of the lettuce taper position. Mr. Johnson had reviewed both a written job description and a videotape of the lettuce taper position and testified that it required the claimant to stand on a platform of a lettuce processing machine, to take heads of lettuce wrapped in plastic from a rack, to place them in a sealing machine, and then to remove them and place them on a conveyor belt on the opposite side of the sealing machine. Based on that information and Dr. Anderson's approval, it was Mr. Johnson's opinion that the position was suitable for the claimant.

The record suggests the possibility of a gross miscommunication. The claimant and the labor market consultant could hardly have been talking about the same job. The

attorneys do not appear to have been aware of this discrepancy in job description. The ALJ, however, appears to have resolved the conflict by concluding that the job of lettuce taper was suitable for the claimant.

The ALJ is the sole judge of witness credibility and resolves all conflicts in the evidence. *See, e.g., Holding v. Industrial Comm'n,* 139 Ariz. 548, 551, 679 P.2d 571, 574 (App.1984); *Reynolds Metal Co. v. Industrial Comm'n,* 22 Ariz.App. 349, 351–52, 527 P.2d 308, 310–11 (1974). Where there is more than one inference presented by the evidence, the ALJ may choose either inference and this court will not reverse that conclusion unless it is wholly unreasonable. *Id.*

Here, the claimant's testimony was directly contradicted by the testimony of Mr. Johnson. The ALJ, as the trier of fact, was entitled to resolve this conflict. *See Anamax Mining Co. v. ADES,* 147 Ariz. 482, 486, 711 P.2d 621, 625 (App.1985)(credibility of witnesses is peculiarly within the province of trier of fact in administrative proceedings). Because the record contains reasonable evidence to support the ALJ's resolution of credibility in favor of the testimony of Mr. Johnson, we find no error in the determination that the job of lettuce taper was suitable for the claimant.

## B. Availability of Employment

The claimant next argues that Arizona caselaw focuses the determination of reasonable availability of employment on jobs that are available in the claimant's economic area. The ALJ's determination, the claimant contends, would require him to become a migrant worker because employment as a lettuce taper is not available year-round in Yuma, Arizona.

"The existence of the claimant's earning capacity is shown by evidence that there is employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training." *Zimmerman,* 137 Ariz. at 582, 672 P.2d at 926. A claimant's earning capacity is measured by the local labor market, *Western Union v.*

*Industrial Comm'n,* 13 Ariz.App. 189, 192, 475 P.2d 281, 284 (1970), which includes the area where the employee lived and worked at the time of the industrial injury and any area to which the employee may relocate thereafter. *See* Arizona Workers' Compensation Handbook § 7.4.2.4 at 7–24 (Ray Jay Davis et al., 1992). The Arizona Supreme Court has held that "it would be most unreasonable to require a complainant to abandon his established home and at an expense he can ill afford, travel from state to state or community to community in a hopeful but possibly futile effort to obtain a position." *See Phelps Dodge Corp. v. Industrial Comm'n,* 90 Ariz. 248, 250, 367 P.2d 270, 272 (1961); *Schnatzmeyer v. Industrial Comm'n,* 77 Ariz. 266, 269, 270 P.2d 794, 796 (1954). A reasonable effort to obtain employment "does not require the claimant to look for work beyond the general area of where he lives." 1C Arthur Larson, *The Law of Workmen's Compensation* § 57.61(d) at 10–440 (1994). Professor Larson, however, has also stated that "if a claimant places undue limitations on the kind of work he will accept, including limitations not justified by the character of his impairment" the effort to find employment will not be considered reasonable. *Id.* at 10–441 to 487.

This court has recognized that a claimant can voluntarily expand his geographical labor market. *See Ihle v. Industrial Comm'n,* 14 Ariz.App. 463, 465–66, 484 P.2d 232, 234–35 (1971). The Arizona Supreme Court also found that when a claimant voluntarily moves from the locality where the injury was sustained, "findings regarding his loss of earning capacity may be based on the job market in either his new residence or in the locality where the injury was sustained." *Zimmerman,* 137 Ariz. at 581, 672 P.2d at 925.

Here, prior to his injury, the claimant worked in both Salinas, California, and Yuma, Arizona. He was hired in Salinas with the understanding that he would be required to travel between the two locales to have steady year-round employment. At the time of his industrial injury, the claimant was traveling between Salinas and Yuma working for Salyer twelve months per year, and his

average monthly wage was based on his year-round employment with Salyer.

We further note that the claimant does not argue that he did not travel prior to his injury, nor does he argue that any physical impairment prevents him from traveling. Based on this record, we believe that the claimant voluntarily expanded his labor market to include both Salinas, California, and Yuma, Arizona.

In sum, reasonable evidence supports the ALJ's findings that work as a lettuce taper was suitable for and reasonably available to the claimant. The award is therefore affirmed.

GARBARINO and KLEINSCHMIDT, JJ., concur.