NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MIKE MANONE, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

MJ MANONE LLC,[1] *Respondent Employer*,

THE CINCINNATI INSURANCE COMPANY, *Respondent Carrier*.

No. 1 CA-IC 16-0051
FILED 6-29-2017

---

Special Action - Industrial Commission
ICA Claim No. 20141-610093
Carrier Claim No. 2223583
Rachel C. Morgan, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Snow, Carpio & Weekley, PLC, Phoenix
By Chad T. Snow, Dennis R. Kurth
*Counsel for Petitioner*

---

[1]     The court amends the caption to properly reflect the business name of MJ Manone LLC.  The above caption shall be used in all further filings with the court in this matter.

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent Industrial Commission of Arizona*

Lester, Norton & Brozina, P.C., Phoenix
By Rachel P. Brozina, Jo Fox Zingg
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Acting Presiding Judge Peter B. Swann and Judge Margaret H. Downie joined.

---

**C R U Z**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a loss of earning capacity ("LEC"). One issue is presented on appeal: whether the administrative law judge ("ALJ") legally erred by using the greater Phoenix area as an appropriate geographical labor market to establish Petitioner Mike Manone's ("Petitioner") LEC. Because the evidence of record does not support the ALJ's finding regarding the geographical labor market, we set aside the award.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** On April 1, 2014, Petitioner injured his left shoulder and arm while working as a self-employed home builder doing business as MJ Manone LLC. He filed a workers' compensation claim, which was accepted for benefits by the respondent carrier, The Cincinnati Insurance Company. Petitioner underwent two surgeries, first for a torn rotator cuff and a severed biceps tendon, and second for an infection at the surgery site.

**¶3** After rehabilitation, Petitioner became medically stationary with an unscheduled permanent partial impairment. The ICA then entered an administrative award for no LEC,[2] and Petitioner timely requested an

---

[2] The ICA makes an initial determination of whether a permanent impairment has resulted in a LEC. *See* Ariz. Rev. Stat. ("A.R.S.") § 23-1047(A).

2

ICA hearing. The ALJ heard testimony from Petitioner and two labor market experts: Richard A. Prestwood and Lisa A. Clapp.

¶4 The ALJ entered an LEC award based on Ms. Clapp's testimony. Petitioner requested administrative review, but the ALJ summarily affirmed the award. Petitioner next brought this appeal.

¶5 This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.[3]

## DISCUSSION

¶6 In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

¶7 Petitioner argues that the ALJ legally erred by concluding that the greater Phoenix area was part of the appropriate geographical labor market for establishing his LEC. A claimant's earning capacity must be assessed with reference to his "area of residence," which includes the area where the employee lived and worked at the time of the industrial injury and any geographical labor market to which the employee relocated thereafter. *See Arizona Workers' Compensation Handbook*, § 7.4.2.4, at 7-24 (Ray J. Davis et al. eds., 1992 & Supp. 2015); *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 581, 672 P.2d 922, 925 (1983).

¶8 We addressed the concept of the geographical labor market in *Kelly Services v. Industrial Commission*, 210 Ariz. 16, 106 P.3d 1031 (App. 2005).

> [T]he more appropriate inquiry for determining whether a particular labor market (not requiring a change in residence) is within a claimant's "area of residence" is whether a reasonable person in the claimant's situation would probably seek employment there. In making such a determination, a totality of the circumstances approach, in which all relevant factors are considered, should be used. By way of example

---

[3] We cite the current version of statutes and rules unless revisions material to this decision have since occurred.

only, relevant considerations in determining whether a potential job lies within a person's geographical labor market area would typically include *availability of transportation, duration of commute, and the length of workday.* . . . It would also include the ability of the person to make the commute based on his physical condition.

*Id.* at 20, ¶ 15, 106 P.3d at 1035 (citations omitted) (emphasis added). Professors Larson have recognized that a reasonable effort to obtain employment "does not require the claimant to look for work beyond the general area where he or she lives."  7 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 84.01[4], at 84-10 (2016).

¶9        Petitioner testified that from 2005 – 2013, most of his work was in Phoenix.  In 2013, he moved to Yarnell, "after the fire, to help the victims rebuild their homes."  He has lived there continuously since 2013, in a home he rents in Peeples Valley.  After Petitioner's treating doctor released him to return to work, all his work has been in Yarnell except for one job in Glendale.

¶10        Petitioner testified that based on his industrially-related physical restrictions, he has been limited to much smaller construction projects, such as decks and garages.  He has also helped another builder, RGB Restoration and Builders, by overseeing two of its projects:  one in Glendale and the other in Yarnell.[4]  Petitioner testified that he is separated from his wife, but when he came to Glendale for the RGB job, she let him stay at her Glendale apartment.

¶11        Both labor market experts addressed the geographical labor market. Mr. Prestwood testified:

Well, I left out the Phoenix area because he is in excess of two hours from Phoenix. Surprise might fit in.  Yarnell would fit in. Prescott would fit in.  We're still looking at . . . 25 miles to get to Wickenburg and 55 miles from Prescott . . . .  So I left out the Phoenix metropolitan area. . . .  Phoenix metropolitan area if you go far, far west.  . . .  Central Phoenix, no; west

---

[4]        Petitioner testified that he is a member of RGB, a roofing business, and he brought the Yarnell job to RGB.  RGB offered him $250 per week to oversee the jobs.

Phoenix, no, unless you want to take off 55 cents a mile for the
additional driving he would do.

Ms. Clapp testified that she used both the Phoenix metropolitan area as well
as the Prescott area. She identified five different positions: one in Phoenix,
one in Chandler, two in Tempe, and one in Prescott. She explained that it
was not "unusual for builders to go where the projects are," and Petitioner
"had access to" an apartment in Glendale.

**¶12**        The ALJ resolved the conflict in the labor market evidence in
favor of Ms. Clapp. She summarized Ms. Clapp's testimony, "over the two
years prior to the industrial injury, applicant's company serviced both
Yarnell and metropolitan Phoenix and he is presently working in Glendale
. . . ."[5] While technically correct, this statement does not support the legal
conclusion that Phoenix is the proper geographical labor market. Petitioner
was still living and working in Phoenix in 2012, two years before the April
1, 2014 industrial injury. But he relocated to Yarnell in 2013, and he both
lived and worked there at the time of his injury.

**¶13**        We have recognized that a claimant may voluntarily expand
his geographical labor market. *Ihle v. Indus. Comm'n*, 14 Ariz. App. 463, 465-
66, 484 P.2d 232, 234-35 (1971). When a claimant voluntarily moves from
the locality where the injury was sustained, the labor market includes both
where the claimant previously lived and worked, as well as his new
residence. *See Roach v. Indus. Comm'n*, 137 Ariz. 510, 511-12, 672 P.2d 175,
176-77 (1983). In this case, Petitioner testified that since 2013, all his work
has been in Yarnell except for the one RGB job in Glendale. We find this
evidence insufficient to establish a voluntary expansion of the relevant
labor market as a matter of law.[6]

---

[5]        Video surveillance of Petitioner was conducted on five days between
October 3 and October 14. It reflected Petitioner's presence in Glendale for
the RGB job, in Yarnell, observing, supervising, and occasionally assisting
at a building site, and visiting a chiropractor and a physical therapist.

[6]        The ALJ did not make a credibility finding, and this court will not
imply a rejection of credibility. *See Joplin v. Indus. Comm'n*, 175 Ariz. 524,
528, 858 P.2d 669, 673 (App. 1993). Our review in this case is not based on
credibility, but on the application of the facts in the record to law.

¶14        In determining what is within the relevant labor market, we have found that the geographical labor market for a claimant residing in a small rural Arizona town included nearby communities that were 24 and 34 miles away. *See Kelly Servs.*, 210 Ariz. at 17, ¶ 3, 106 P.3d at 1032. But, conversely, the Arizona Supreme Court has found that a claimant living and working in rural Arizona at the time of his industrial injury was not required to look for work in Phoenix, approximately 200 miles from his home. *Phelps Dodge Corp. v. Indus. Comm'n*, 90 Ariz. 248, 250, 367 P.2d 270, 272 (1961).[7]

¶15        In this case, both labor market experts agreed that Prescott was within the relevant labor market—approximately 34 miles and a fifty-minute drive from Yarnell. But only Ms. Clapp included the Phoenix metropolitan area. From Yarnell to central Phoenix is approximately 90 miles and a one hour and forty-minute drive. Three of the positions relied on by Ms. Clapp are in the east valley, further from Petitioner's Yarnell home.

¶16        The carrier argues that *Paramo v. Industrial Commission*, 186 Ariz. 75, 918 P.2d 1093 (App. 1996), supports Ms. Clapp's inclusion of Phoenix in the relevant labor market. We disagree and find *Paramo* factually distinguishable. In *Paramo*, the claimant was a migrant farm worker. *Id.* at 77, 918 P.2d at 1095. He traveled between Yuma, Arizona, and Salinas, California, harvesting crops. *Id.* The *Paramo* claimant spent the year working in each location. *Id.* This court held that his relevant labor market included both cities. *Id.* at 79-80, 918 P.2d at 1097-98. In this case, Petitioner did not work in Phoenix after he relocated to Yarnell in 2013. We find that *Paramo* is not applicable and Phoenix is outside Petitioner's geographical labor market.

¶17        Based on our resolution of the geographical labor market issue, it is not necessary to address the issue of travel expenses. *See Ihle*, 14 Ariz. App. at 465-66, 484 P.2d at 234-35 (Arizona courts have recognized that when a claimant voluntarily expands his relevant labor market by seeking employment outside of the area where he lived and worked at the

---

7        For purposes of the good faith work search required to receive unemployment benefits, the Arizona Department of Economic Security defines a "reasonable commuting distance" as not more than: "20 miles from the claimant's residence to place of employment," "one hour elapsed commuting time one way," or "[c]ommuting expense equal to 15% or more of a claimant's gross wage." *See* Ariz. Admin. Code R6-3-52150.D.6.

time of the injury, travel expenses become a relevant consideration for the LEC).

## CONCLUSION

¶18      For all of the foregoing reasons, we set aside the award.



AMY M. WOOD • Clerk of the Court
FILED:  AA