NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NICHOLAS NIEVES, *Appellant*,

*v.*

OPULENT REAL ESTATE GROUP, L.L.C.

and

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,
*Appellees*.

No. 1 CA-UB 16-0027
FILED 6-7-2018

Appeal from the A.D.E.S. Appeals Board
No.  U-1510656-001-BR

**AFFIRMED**

COUNSEL

Nicholas Nieves, Phoenix
*Appellant*

Law Office of Joseph A. Velez, Scottsdale
By Joseph A. Velez
*Counsel for Appellee Opulent Real Estate Group, LLC*

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Arizona Department of Economic Security*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Kent E. Cattani and Chief Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

**¶1**          Nicholas Nieves appeals the Arizona Department of Economic Security ("DES") Appeals Board (the "Board") decision denying his appeal for unemployment insurance benefits.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**          Opulent Real Estate Group, L.L.C. ("Opulent") terminated Nieves from his position as a leasing agent.  Nieves applied for unemployment benefits and the Deputy determined that Nieves was eligible, finding that Opulent provided "no singular reason" to disqualify Nieves.  Opulent timely requested an appeal and hearing concerning the Deputy's determination.  The DES Appeal Tribunal ("Tribunal") held a telephonic hearing.  Nieves, Opulent's owner James Ruley, and Opulent's witness Clara Ramos testified.  Counsel appeared on behalf of Opulent.  At the start of the hearing, Opulent stated that it intended to call Ramos as its only witness.

**¶3**          As the hearing proceeded, before calling Ramos as a witness, Opulent indicated that it wanted to examine Ruley.  Nieves did not contest the use of Ruley as a witness, and Ruley testified that he had received 11 complaints concerning Nieves over the course of Nieves's 8 months of employment.  Clients were dissatisfied with Nieves's service and conduct, and internal team members had complained about Nieves's behavior in the office.  Ruley had warned Nieves three times before the final incident leading to his termination.  Thereafter, another employee, Ramos, reported to Ruley that Nieves had "screamed and yelled" at coworker Kat Jacobson, referring to her "disparagingly as a bitch and a rook[ie]" and that Jacobson had left the office after the incident.

**¶4**          Ramos corroborated Ruley's testimony, stating that she "had witnessed Nick screaming" at Jacobson calling her a "bitch and a rook[ie] [and] . . . witnessed Nick being rude in our office, talking down to her and

using vulgarity towards her." Ruley discharged Nieves because there were a "substantial amount of [client] complaints against Mr. Nieves in addition to internal team member complaints" accusing Nieves of "being rude in [the] office."

¶5          Nieves then examined the witnesses, presented his case, and had the opportunity to make a closing statement. After the hearing, the Tribunal reversed the Deputy's ruling, determining that Nieves was disqualified for willful or negligent misconduct on the basis of his interactions with coworkers. Nieves appealed the determination and sent new evidence to the Board in his appeal, and the Board's three-judge panel affirmed. Nieves requested a review, and the Board affirmed on the same basis after correcting a procedural defect. Nieves then filed this timely application for appeal. This court then granted the application for review and has now considered the briefs filed on appeal.

## DISCUSSION

¶6          Nieves argues that the Board erred by: (1) considering hearsay evidence; (2) declining to consider Nieves's "new evidence" upon review; (3) allowing a certain witness to testify; and (4) concluding there is sufficient evidence to support the denial of benefits.

¶7          We review the evidence in the light most favorable to sustaining the Board's decision, and will affirm if any reasonable interpretation of the record supports the decision. *Baca v. Ariz. Dep't of Econ. Sec.*, 191 Ariz. 43, 46 (App. 1997). And we review a request to supplement the record with new evidence for an abuse of discretion. *See Avila v. Ariz. Dep't of Econ. Sec.*, 160 Ariz. 246, 249 (App. 1989). We accept the Board's factual findings unless they are arbitrary, capricious, or constitute an abuse of discretion. *Figueroa v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 548, 550, ¶ 9 (App. 2011).

I.      THE BOARD DID NOT ERR BY CONSIDERING HEARSAY EVIDENCE.

¶8          Nieves appears to contest the Board's reliance on hearsay testimony as the "sole[ ]" determinative factor in affirming the Tribunal's decision. Hearsay is admissible in administrative proceedings before the Board. *Begay v. Ariz. Dep't of Econ. Sec.*, 128 Ariz. 407, 409 (App. 1981). To be admissible, the evidence must possess "probative value commonly accepted by reasonably prudent persons in the conduct of their affairs." A.R.S. § 23-674(D). Upon admission, hearsay evidence may be given either

probative weight or be the sole support of an administrative decision. *Begay*, 128 Ariz. at 409–10.

**¶9**     Here, the Tribunal admitted hearsay testimony presented through Ruley, Nieves's supervisor.  At the hearing, Ruley testified that Ramos told him that Nieves had "screamed and yelled" at their coworker Jacobson, referring to her "disparagingly as a bitch and a rook[ie]" and as a result, Jacobson left work early the same day.  The testimony is of the type reasonably accepted by prudent persons in the conduct of their affairs, it was probative of Nieves's behavior toward coworkers, and it supported Opulent's basis for terminating Nieves.  Further, while statements made by Ruley may be hearsay, Ramos — who directly witnessed Nieves's behavior — corroborated Ruley's statements and her account was not hearsay.  Accordingly, the Board did not err by relying on Ramos and Ruley's testimony as support for affirming the Tribunal's administrative decision.

## II.     THE BOARD DID NOT ERR BY DECLINING TO CONSIDER NEW EVIDENCE UPON REVIEW.

**¶10**     Nieves also argues that the Board wrongfully suppressed his "impeachment evidence by not reviewing it."  The Board, however, may elect to not allow the introduction of additional information, unless it can be shown that such information could not have been presented at the Tribunal hearing with some exercise of due diligence, or unless the facts of the case establish some unusual circumstance that would justify supplementing the record and deciding the case on a new record.  A.R.S. § 23-674(D); A.A.C. R6-3-1504.  Before the hearing, Nieves was directed to submit all potential exhibits.  The record shows that upon submitting a request for review by the Board, Nieves presented new evidence.  Nieves provided no reason for the untimely submission of the new evidence, such as unusual circumstances suggesting that the information could not have been presented with the exercise of due diligence.  Rather, he stated simply that he did not have "advanced notification before the hearing that this hearsay claim/issue was going to be considered as part of the hearing."  The notice Nieves received concerning the hearing sufficiently informed him of the issues Opulent would raise.  *See* A.A.C. R6-3-1502(B)(2) (the notice received by parties to a hearing "shall contain . . . the issues involved").  Here, the Board determined that the notice "clearly identifies one of the issues as 'whether the claimant was discharged for misconduct or a compelling personal reason.'"

**¶11**     We also disagree with Nieves's argument that the Board's refusal to grant review of the new evidence he provided after the Tribunal

hearing violated his due process rights. Before the hearing, Nieves received notice of the issues that Opulent intended to raise and Nieves was afforded the opportunity to present his case, respond to allegations, present evidence, and rebut any unfavorable testimony. *Salas v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 141, 143 (App. 1995) ("Procedural due process includes the right to notice and opportunity to be heard at a meaningful time and in a meaningful manner."). Accordingly, the Board neither violated Nieves's due process rights nor erred by declining to consider his new evidence presented after the Tribunal hearing.

III. THE TRIBUNAL DID NOT ERR BY ALLOWING RAMOS TO TESTIFY.

¶12 Nieves contends that Ramos is "not a credible witness" and the Tribunal therefore erred by allowing her to testify. But the credibility of witnesses is within the province of the trier of fact in administrative proceedings. *Anamax Mining Co. v. Ariz. Dep't of Econ. Sec.*, 147 Ariz. 482, 486 (App. 1985). A witness's credibility goes to the weight of his testimony — not to the testimony's admissibility. Because the administrative law judge is the sole judge of witness credibility, we decline to question the administrative law judge's determination. *See Paramo v. Indus. Comm'n*, 186 Ariz. 75, 79 (App. 1996).

IV. THERE IS SUFFICIENT EVIDENCE ON THE RECORD SUPPORTING THE BOARD'S DETERMINATION.

¶13 Finally, Nieves argues that Opulent did not meet its burden of proof to show a basis for misconduct. The Board affirmed the Tribunal's determination that Nieves was discharged for "misconduct connected with the employment" under A.R.S. §§ 23-619.01 and -775, and A.A.C. R6-3-51390. Misconduct in connection with work includes "[i]nsubordination, disobedience, repeated and inappropriate use of abusive language" and "[v]iolation without good cause of any rule of conduct . . . which can be reasonably implied from the type of employment." A.R.S. § 23-619.01(B)(5), (8); *see also* A.A.C. R6-3-5105(A)(1)(c). Opulent presented sufficient evidence that Nieves acted inappropriately during the course of his employment and had received three warnings concerning his conduct. Ruley and another employee testified that despite the warnings, Nieves called a coworker a "rook[ie]" and "bitch," and employees reported separate complaints about Nieves's conduct in the office. Such circumstances are sufficient for a finding that Nieves acted with disobedience and that he repeatedly and inappropriately used abusive

language toward coworkers. Therefore, we conclude that there is sufficient evidence to support the Board's decision.

## CONCLUSION

**¶14** For the foregoing reasons, we affirm the Board's determination denying Nieves unemployment benefits.



AMY M. WOOD • Clerk of the Court
FILED: AA